## CLAWSON *v.* UNITED STATES.

IN ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

Argued April 8, 1885.—Decided April 20, 1885.

Under § 5 of the act of Congress of March 22, 1882, 22 Stat. 30, which provides, "that in any prosecution for bigamy, polygamy, or unlawful cohabitation, under any statute of the United States, it shall be sufficient cause of challenge, to any person drawn or summoned as a juryman or talesman, . . . that he believes it right for a man to have more than one living and undivorced wife at the same time," the proceedings to empanel the grand jury which finds an indictment for one of the offences named, under a statute of the United States, against a person not before held to answer, are a part of the prosecution, and the indictment is good, although persons drawn and summoned as grand jurors were excluded by the court from serving on the grand jury, on being challenged by the United States, for the cause mentioned, the challenges being found true.

The Statute applies to grand jurors.

Where, under § 4 of the act of Congress of June 23, 1874, 18 Stat. 254, "in relation to courts and judicial officers in the Territory of Utah," in the trial of an indictment, the names in the jury-box of 200 jurors, provided for by that section, are exhausted, when the jury is only partly empanelled, the District Court may issue a venire to the United States marshal for the Territory, to summon jurors from the body of the judicial district, and the jury may be completed from persons thus summoned.

This writ of error was sued out to review an indictment and conviction of the plaintiff in error for polygamy, and for cohabiting with more than one woman, against the laws of the United States.

The facts are stated in the opinion of the court.

*Mr. Wayne McVeagh* and *Mr. Franklin S. Richards* for plaintiff in error.

*Mr. Solicitor-General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

At April Term, 1884, of the Third Judicial District Court of Utah Territory, Rudger Clawson was indicted, under two counts, in the same indictment, one for polygamy, and the other for cohabiting with more than one woman. The first count was founded on § 5,352 Rev. Stat. as amended by § 1 of the act of March 22, 1882, 22 Stat. 30; and the second on § 3 of that act. By § 4, counts for those offences may be joined in the same indictment. The defendant was tried in October, 1884, and found guilty on both counts, as charged, and sentenced, on the first count, to pay a fine of $500, and to be imprisoned three years and six months; and, on the second count, to pay a further fine of $300, and to be imprisoned the further term of six months; and, further, to be confined till the fines be paid. From this judgment he appealed to the Supreme Court of the Territory, which affirmed the judgment and sentence, and he brought the case to this court by a writ of error.

The indictment was presented and filed in court, April 24, 1884. On the 30th of April, 1884, before plea, the defendant moved to set aside the indictment, on the ground that the grand jury was not legally constituted, in that qualified grand jurors, drawn and summoned, were illegally excluded from the grand jury, on the challenge of the prosecuting attorney. The motion was heard on an agreed statement of facts, which is set out in the bill of exceptions, and was overruled, and the defendant excepted to the decision. The first error here assigned is, that that motion was improperly overruled.

By § 4 of the act of Congress of June 23, 1874, 18 Stat. 254, entitled "An Act in relation to courts and judicial officers in the Territory of Utah," it is provided as follows: "That within sixty days after the passage of this act, and in the month of January annually thereafter, the clerk of the District Court in each judicial district, and the judge of probate of the county in

which the District Court is next to be held, shall prepare a jury list from which grand and petit jurors shall be drawn, to serve in the District Courts of such district, until a new list shall be made as herein provided. Said clerk and probate judge shall alternately select the name of a male citizen of the United States who has resided in the district for the period of six months next preceding, and who can read and write in the English language; and, as selected, the name and residence of each shall be entered upon the list, until the same shall contain two hundred names, when the same shall be duly certified by such clerk and probate judge; and the same shall be filed in the office of the clerk of such District Court, and a duplicate copy shall be made and certified by such officers, and filed in the office of said probate judge. Whenever a grand or petit jury is to be drawn to serve at any term of a District Court, the judge of such district shall give public notice of the time and place of the drawing of such jury, which shall be at least twelve days before the commencement of such term; and on the day and at the place thus fixed, the judge of such district shall hold an open session of his court, and shall preside at the drawing of such jury; and the clerk of such court shall write the name of each person on the jury lists returned and filed in his office upon a separate slip of paper, as nearly as practicable of the same size and form, and all such slips shall, by the clerk in open court, be placed in a covered box, and thoroughly mixed and mingled; and thereupon the United States marshal, or his deputy, shall proceed to fairly draw by lot from said box such number of names as may have previously been directed by said judge; and if both a grand and petit jury are to be drawn, the grand jury shall be drawn first; and when the drawing shall have been concluded, the clerk of the District Court shall issue a venire to the marshal or his deputy, directing him to summon the persons so drawn, and the same shall be duly served on each of the persons so drawn at least seven days before the commencement of the term at which they are to serve; and the jurors so drawn and summoned shall constitute the regular grand and petit juries for the term for all cases. And the names thus drawn from the box by the clerk shall not

be returned to or again placed in said box until a new jury list shall be made. If during any term of the District Court any additional grand or petit jurors shall be necessary, the same shall be drawn from said box by the United States marshal in open court; but if the attendance of those drawn cannot be obtained in a reasonable time, other names may be drawn in the same manner. . ·. . The grand jury must inquire into the case of every person imprisoned within the district on a criminal charge and not indicted. . . ."

A jury list of two hundred persons from which to draw grand and petit jurors for the Third Judicial District Court for the year 1884 was made, certified and filed in the office of the clerk of the court, under the above-cited provisions of the act of June 23, 1874, and a number was set opposite to each name. Those having even numbers opposite to their names were selected by the probate judge, and were reputed Mormons, and those having odd numbers opposite to their names were selected by the clerk of the court, and were reputed not to be Mormons. On the 31st of March, 1884, at a session of the court, thirty names were drawn from the jury list, from which to empanel a grand jury for the April term, 1884. Of these thirty, thirteen had even numbers, and seventeen odd numbers. Of the thirty, five did not appear or were excused, leaving twenty-five, of whom ten had even numbers and fifteen odd numbers. Those twenty-five persons, during the proceedings to empanel the grand jury, were all called and sworn and examined as to their qualifications as grand jurors, fifteen of them being each asked the following questions: "Do you believe in the doctrine and tenets of the Mormon church? Do you believe in the doctrine of plural marriage, as taught by the Mormon church? Do you believe it is right for a man to have more than one undivorced wife living at the same time?" Each of the fifteen persons so interrogated answered the questions affirmatively, each was thereupon challenged by the prosecuting attorney, and the court allowed the challenges, and excluded each of those fifteen persons from the grand jury. Thus every one of the twenty-five persons who was a reputed Mormon was excluded from the grand jury. Each of the

fifteen persons so interrogated had all the qualifications pre-
scribed by law for grand jurors, unless disqualified by such
answers.  The defendant had not been charged with, or held
to answer, the offences charged in the indictment, or any crim-
inal offence, at the time the grand jury was empanelled; the
examination of the persons called as grand jurors, and the
challenges, were wholly conducted and made by the prosecuting
attorney; and no questions were propounded to, or answered
by, persons with odd numbers opposite their names, respecting
their religious belief.  After those fifteen persons were ex-
cluded, only ten grand jurors accepted by the United States
remained out of the list of thirty originally drawn; and there-
upon the court ordered a drawing of ten additional names from
the general list of two hundred, which was done, three having
even numbers, and seven odd numbers.  A venire was issued
for the ten, and six of them appeared, all having odd numbers,
and five of the six were added to the ten accepted, and the
jury, as empanelled and sworn, consisted of those fifteen, all
of them reputed non-Mormons, and it found and presented the
indictment against the defendant.

The challenging and exclusion of the fifteen persons is main-
tained to have been proper, under § 5 of the act of March 22,
1882, before referred to, and which reads as follows: "That
in any prosecution for bigamy, polygamy or unlawful co-
habitation, under any statute of the United States, it shall
be sufficient cause of challenge to any person drawn or
summoned as a juryman or talesman, first, that he is or
has been living in the practice of bigamy, polygamy or
unlawful cohabitation with more than one woman, or
that he is or has been guilty of an offence punishable
by either of the foregoing sections, or by section fifty-
three hundred and fifty-two of the Revised Statutes of the
United States, or the act of July first, eighteen hundred and
sixty-two entitled, 'An Act to punish and prevent the practice
of polygamy in the Territories of the United States and other
places, and disapproving and annulling certain acts of the
Legislative Assembly of the Territory of Utah,' or, second,
that he believes it right for a man to have more than one liv-

ing and undivorced wife at the same time, or to live in the practice of cohabiting with more than one woman; and any person appearing or offered as a juror or talesman, and challenged on either of the foregoing grounds, may be questioned on his oath as to the existence of any such cause of challenge, and other evidence may be introduced bearing upon the question raised by such challenge; and this question shall be tried by the court. But as to the first ground of challenge before mentioned, the person challenged shall not be bound to answer if he shall say upon his oath that he declines on the ground that his answer may tend to criminate himself; and if he shall answer as to said first ground, his answer shall not be given in evidence in any criminal prosecution against him for any offence named in sections one or three of this act; but if he declines to answer on any ground, he shall be rejected as incompetent."

As each of the fifteen persons challenged and excluded, answered, when questioned on oath, that he believed it right for a man to have more than one undivorced wife living at the same time, he was properly excluded, if § 5 of the act applied to the case.

It is contended that that section did not apply because the defendant had not been held to answer, and there was no prosecution against him. The language of the section is, that "in any prosecution for bigamy, polygamy, or unlawful cohabitation, under any statute of the United States, it shall be sufficient cause of challenge," etc. It is urged that the proceedings to empanel a grand jury were not part of a prosecution, and that the prosecution could not begin until after the grand jury had been completely empanelled. But we think this is too narrow a view of the statute. The whole scope of § 5 is to prescribe what shall be sufficient causes of challenge to be made by the United States in a case of bigamy, polygamy, or unlawful cohabitation. It is the United States alone who would desire to exclude from the grand jury persons answering the descriptions named in the section. It is not contemplated that a person to be prosecuted for the offences specified would challenge for any of the causes set forth. The mischief to be

remedied was the having as grand jurors, against the interest of the United States, the persons specified, in a prosecution for the particular offences named. If the grand jury enters upon the investigation of cases involving the offences designated, and such investigation results in the finding of an indictment for any of those offences, it cannot properly be alleged by the defendant in the indictment that the prosecution did not, within the meaning of § 5, begin with the first step in the proceedings to obtain the grand jury which found the indictment. And, for the protection of the defendant himself, it would necessarily be equally held that he was entitled to claim that such proceedings were a part of the prosecution against him, because otherwise he could have no right to question those proceedings.

The prosecution was one for offences created by a statute of the United States. That is the meaning of § 5 of the Act. And it is not an objection that can be urged by this defendant that the same grand jury might have been called upon to act on other offences than those named in that section.

It is also urged that § 5 does not apply to grand jurors. The language is, " any person drawn or summoned as a juryman or talesman "—" any person appearing or offered as a juror or talesman." In view of the fact that by § 4 of the act of June 23, 1874, both grand jurors and petit jurors are to be drawn from the box containing the two hundred names, and are to be summoned under venires, and are to constitute the regular grand and petit juries for the term, and of the further fact that the persons to be challenged and excluded are persons not likely to find indictments for the offences named in § 5, we cannot doubt that the words " juryman " and " juror " include a grand juror as well as a petit juror. There is as much ground for holding that it includes the former alone, as the latter alone, if it is to include but one. It must include one at least, and we think it includes both. The purpose and reason of the section include the grand juror; and there is nothing in the language repugnant to such view. The use of the words " drawn or summoned as a juryman or talesman," and of the words " appearing or offered as a juror or talesman," does not have the

effect of confining the meaning of "juror" to "petit juror," on the view that the ordinary meaning of "talesman" refers to a petit juror. A grand juror is a juryman and a juror, and is drawn and summoned, and it might well have been thought wisest to mention a "talesman" specifically, lest the words "juryman" and "juror" might be supposed not to include him.

It is objected that none of the grand jurors who were retained on the panel were interrogated as to whether they believed it right for a man to live in the practice of cohabiting with more than one woman. As to this it is sufficient to say, that the challenges were based on the affirmative answers to the third question, and that the statute only specifies what shall be a sufficient cause of challenge, and does not compel the making of the challenge or the asking of the questions.

After the motion to set aside the indictment was overruled, the trial was had, on a plea of not guilty. In empanelling a jury, it appeared that the list of jurors drawn and summoned for the term, and also the general jury list for the year, consisting of two hundred names selected and returned for a general jury list, were exhausted, and that no names remained in the general jury box. Thereupon, the prosecuting attorney, on the ground that the jury list provided for by statute was exhausted, moved the court that an open venire issue, to summon such jurors as were necessary. The defendant objected to the issuing of an open venire or any venire for jurors, on the ground that there was no law authorizing it. The court overruled the objection, and the defendant excepted. By an order of the court, a venire was then issued to the United States marshal for Utah Territory, commanding him to summon from the body of the judicial district fifty jurors. They were summoned, and, on the return of the venire, the panel was challenged by the defendant because the jurors were selected and summoned on an open venire. The challenge was overruled and the defendant excepted. Like proceedings took place in respect to two further open venires for thirty and twenty-four jurors respectively. Of the twelve persons who composed the jury, eleven were obtained from those summoned under the open venires.

It is assigned for error, that the petit jury was illegally con-
stituted, in that the court had no right to summon petit jurors
on an open venire.   The argument is, that the provisions of
§ 4 of the act of June 23, 1874, are, on their face, exclusive;
that the method prescribed by that section for obtaining jurors
is the only one that can be employed; that only the probate
judge and the clerk of the court can select the jurors, and make
the jury list; that the grand and petit jurors for a term must
be drawn by the marshal from a box containing names of per-
sons thus selected, and constitute the regular grand and petit
juries for the term; that if, during the term, any additional
grand or petit jurors are necessary, they must be drawn by the
marshal, in open court, from the same box; and that, if the
two hundred names are all drawn out, for grand or petit
jurors, at any time during the year, there can be no more in-
dictments found, or any more civil or criminal jury trials had,
in the court of the district, for the rest of the year, because it
is provided in § 4 that the jurors drawn from the box shall be
jurors only for the term, of which there are four in the year,
and that the names drawn shall not be again placed in the box
until a new jury list is made, which is to be done annually in
January.   A result so disastrous to the administration of jus-
tice, so certain to impair, if not destroy, public and private
rights, is not to be permitted, unless imperatively required.
The act of June 23, 1874, does not prescribe the making of a
new list by the probate judge and clerk except once a year, in
January, or the making by them of an additional list, at any
time during the year.   But that act does not directly, or by
implication or intendment, exclude the use of an open venire
when the two hundred names are exhausted during the year.
It provides that the jurors drawn and summoned shall consti-
tute " the *regular* grand and petit juries for the term, for all
cases."   By other provisions of law, each of the District Courts
of the Territory is required to hold four terms a year.   There
is no doubt that jurors must be drawn from the two hundred
names, or those of them remaining in the box, so long as any
remain.   But the question is: What is to be done when those
names are exhausted ?   If there is no method that can be re-

sorted to to obtain jurors, in such event, the provisions in § 5 of the act of 1882, for challenges by the United States, with a view to indictments for the offences named in that section, will have proved suicidal, and resulted in destroying all opportunity to find or try such indictments. We are not referred to any statutory provision, in any act of Congress, or any act of the Territory, which forbids the use of an open venire when the two hundred names are exhausted. The argument is, that the provisions of § 5 of the act of 1882 cover the entire subject of obtaining jurors, and do not allow of any supplementary measures; and that such measures cannot be resorted to unless affirmative statute authority, directed to the very point, is to be found.

The Supreme Court of Utah, in its opinion affirming the judgment in the present case, did not refer to any statute of Congress, or of the Territory, directly authorizing the open venire, but rested the power to issue it on the fact that such power was inherent in the court and was not forbidden by any statute in force in Utah; and held that it followed as an incident to the authority and duty of the District Court to hold its sessions and try by jury indictments for crimes. We concur in this view, so far as the resort to the open venire after the exhaustion of the two hundred names is concerned.

Section 4 of the act of 1874 prescribes the rule to be observed, to the extent in which it prescribes any rule. It proceeds on the view that the jury list of two hundred names will be sufficient for ordinary purposes, or, as it expresses it, for "the regular grand and petit juries for the term;" and it provides what shall be done so long as there are any names left in the box. But it is silent as to what shall take place when the names are all exhausted. It does not forbid the ordinary and well known resort to an open venire. Moreover, § 5 of the act of 1882, in regard to prosecutions like the present one, prescribes what shall be a sufficient cause of challenge to a person "drawn or summoned as a juryman or talesman," and what questions may be put to "any person appearing or offered as a juror or talesman," thus recognizing a "talesman" as distinct from a "juryman" or a "juror." The persons drawn from the box of two

hundred names are " jurors," and are so defined and called in § 4 of the act of 1874. Congress, therefore, in using the word " talesman," had reference to a person not drawn from such box. The word " talesman " is not satisfied by referring it to the additional jurors which § 4 of the act of 1874 says may and shall be drawn from the box, if they " shall be necessary," during the term. They are not talesmen, in any proper sense, but are as much regular jurors as those first drawn from that box.

The principle which authorized the action of the court in obtaining petit jurors, in this case, after the statutory measures had been exhausted, is sanctioned by authority. Bac. Ab., Juries, C. ; 1 Chitt. Crim. Law, 518 ; 2 Hale P. C. 265, 266 ; *United States* v. *Hill*, 1 Brock. 156 ; *Mackey* v. *The People*, 2 Colorado, 13 ; *Stone* v. *The People*, 2 Scammon, 326 ; *Straughan* v. *The State*, 16 Ark. 37, 43 ; *Wilburn* v. *The State*, 21 Ark. 198, 201 ; *Gibson* v. *The Commonwealth*, 2 Virg. Cases, 111, 121 ; *Shaffer* v. *The State*, 1 How. (Miss.) 238, 241 ; *Woodsides* v. *The State*, 2 How. (Miss.) 655, 659 ; *State* v. *Harris*, Supreme Court of Iowa, September, 1884, 17 Chic. Legal News, 58. By § 1868 Rev. Stat., the District Courts of the Territory have common law jurisdiction, and, under § 1874 of the Revised Statutes and § 1061 of the Compiled Laws of Utah of 1876, those courts have original jurisdiction in criminal cases. By § 217 of the Criminal Procedure Act of Utah of February 22, 1878, all issues of fact in criminal cases must be tried by jury, and by § 7 the defendant in a criminal action is entitled to a speedy trial. A venire to summon jurors is a writ necessary to the exercise of the jurisdiction of the court and agreeable to the principles and usages of law, where it is not forbidden or excluded, and where the affirmative provisions of law have, so far as they extend, been first observed. In *United States* v. *Hill* (before cited), Chief Justice Marshall, speaking of the law as it then existed, says : " It has been justly observed, that no act of Congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers ? The answer is, that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to ex-

ercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But, how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential," page 159.

The cases to which we are referred by the plaintiff in error were cases where express statute provisions had been disregarded or violated. If, in this case, an open venire had been issued before the two hundred names were exhausted, a different question would have been presented.

The record shows no error, and

*The judgment is affirmed.*