SHARP v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 12, 1905.)

No. 2,070.

1. FEDERAL OFFICERS—BRIBERY—INDIAN LANDS—LEASE—INDICTMENT—CERTAINTY.

Where an indictment against a United States Indian agent for bribery alleged that he, having charge of the execution and completion of certain leases for certain tracts of land in a specified Indian reservation, commonly known as the Ponca Pasture, etc., feloniously and corruptly accepted and received the sum of $1,500 from one A. for the purpose of influencing his action on the completion of such leases—the subject-matter of the leases being mere matter of inducement, and the gravamen of the offense the acceptance of and the asking of the bribe—the indictment was not defective for failure to describe the leases with sufficient certainty.

2. SAME—POWER OF AGENT.

Rev. St. U. S. § 2058, provides that each Indian agent within his agency shall manage and superintend the intercourse with the Indians, and execute and perform all regulations and duties not inconsistent with the law that may be prescribed by the President, Secretary of the Interior, or Commissioner or Superintendent of Indian Affairs. Act Cong. Feb. 28, 1891, 26 Stat. 795, c. 383, § 3, Supp. Rev. St. U. S. pp. 897, 898, provides that where purchased lands occupied by Indians are not needed for farming or agricultural purposes, or desired for individual allotments, they may be leased, by authority of the council, on such terms and conditions "as the agent in charge of the reservation may recommend," subject to the approval of the Secretary of the Interior. Held, that an Indian agent, in the execution and completion of leases of such land, was charged with such an official trust that his receiving a bribe to influence his official action thereon rendered him subject to punishment under Rev. St. U. S. § 5501 [U. S. Comp. St. 1901, p. 3709], providing that every officer or person acting for or on behalf of the United States in any official capacity, etc., who asks or accepts any money, etc., with intent to have his action on any question pending before him in his official capacity or in his place of trust or profit influenced thereby, shall be punished.

3. SAME—GRAND JURY—SELECTION.

Where the clerk, in sending to the judges of election the number of jurors to be drawn from the ballot boxes, failed to accompany it with the form of oath to be taken by the judges, as required by St. 1893, § 3098 (6), and the clerk, prior to the general election at which the grand jurors in question were drawn, made only a partial apportionment of the jurors to the different precincts, and directed the judges of election of certain precincts not to return any jury list therefrom, in violation of such section, a grand jury drawn from lists returned was illegal.

4. SAME—DRAWING GRAND JURY—EXCUSING JURORS.

Under a statute declaring that the names first drawn from the jury box shall constitute the grand jury, and the latter the petit jury, for the term to which they are drawn, a grand jury from which jurors whose names were first called were improperly excused, and their places filled by persons whose names were thereafter drawn from the box, was illegal.

In Error to the Supreme Court of the Territory of Oklahoma. For opinion below, see 76 Pac. 177.

S. H. Harris, for plaintiff in error.

Horace Speed, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge. The plaintiff in error, an Indian agent within the Ponca Indian Reservation, Okl. T., was indicted, in Noble county, in said territory, for receiving and soliciting a bribe in his official capacity, and was convicted, on trial to a jury, and sentenced to pay a fine of $750, with imprisonment for two years, upon each of the two counts on which conviction was had.

The first count, in its substantive effect, charged that on the 11th day of February, 1898, within the reservation aforesaid, which is under the exclusive jurisdiction of the United States, and attached to said county for judicial purposes, the said Asa C. Sharp was an officer of the United States, to wit, an Indian agent, acting for and on behalf of the United States, in his official capacity, under and by virtue of the authority of the office of the Commissioner of Indian Affairs of the government of the United States, and, under and by virtue of the authority of the Interior Department of said government, said Sharp, as such officer and as such person acting in his official capacity as aforesaid, "then and there had charge of the execution and completion of certain leases for certain tracts of land in the Ponca Indian Reservation, commonly known as the East Ponca Pasture and the west Ponca Pasture, and also of certain other leases for four certain other tracts of land in the Otoe and Missouri Indian Reservation, commonly known as the west half of the West Otoe Pasture, the east half of the West Otoe Pasture, the west ten thousand acres of the East Otoe Pasture, the east forty-three thousand acres of the East Otoe Pasture, the execution and completion of which leases were then and there pending before him in his official capacity aforesaid, and in his place of trust as such officer and as such person acting for and on behalf of the United States under the authority aforesaid." The indictment then proceeded to charge that in said capacity, and so having charge of the execution and completion of the leases, said Sharp feloniously, corruptly, etc., accepted and received money in the sum of $1,500 from one Henry E. Asp, to have his action upon the execution and completion of the leases aforesaid influenced thereby. The second count differs from the first only in that it charges that said Sharp solicited the sum of $2,000 from one W. F. Smith and one Frank Witherspoon, to have his action in the matter aforesaid influenced.

The first question raised by the assignment of errors is whether or not the indictment states facts sufficient to constitute a public offense, so as to warrant the conviction of the plaintiff in error.

The first objection to the indictment is that the leases are not described with sufficient certainty. The gravamen of the offense charged was the acceptance of and asking a bribe. The subject-matter touching which he consented to be corrupted was mere matter of inducement in pleading. It concerned leases of lands in certain named pastures, of a given designation. The description of the location of the lands was sufficient to advise the defendant

as to the transactions concerning which he offended, and to enable him to make preparation for his defense, as the names of the parties who tendered the bribes were given. This is all the certainty in description, in matter of inducement required in such an indictment. State v. Miles, 89 Me. 142, 36 Atl. 70; Lapham's Case, 156 Mass. 480, 31 N. E. 638; Walsh v. People, 65 Ill. 64, 16 Am. Rep. 569; Glover v. State, 109 Ind. 391, 10 N. E. 282; Rieger v. United States, 107 Fed. 922, 47 C. C. A. 61; 3 Chitty, Crim. Law (4th Ed.) 689–695.

It is further objected to the indictment that an Indian agent, although an officer of the United States, is not empowered either by law or by direction of the Department of the Interior or the Indian Office to execute leases to Indian lands, and that, having no jurisdiction to do the act referred to, he could not be guilty of bribery in relation thereto. The prosecution was predicated of section 5501 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3709], which is as follows:

"Every officer of the United States, and every person acting for or on behalf of the United States, in any official capacity under or by virtue of the authority of any department or office of the government thereof; and every officer or person acting for or on behalf of either house of Congress, or of any committee of either house, or of both houses thereof, who asks, accepts, or receives any money, or any contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on any question, matter, cause, or proceeding which may, at any time, be pending, or which may be by law brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be punished," etc.

Section 2058 of the statute provides that:

"Each Indian agent shall, within his agency, manage and superintend the intercourse with the Indians, agreeably to law; and execute and perform such regulations and duties, not inconsistent with law, as may be prescribed by the President, the Secretary of the Interior, the Commissioner of Indian Affairs, or the Superintendent of Indian Affairs."

By the act of Congress of February 28, 1891, 26 Stat. 795, c. 383, § 3, Supp. to Rev. St. U. S. pp. 897, 898, it is provided that:

"Whenever it shall be made to appear to the Secretary of the Interior that, by reason of age or other disability, any allottee under the provisions of said act, or any other act or treaty cannot personally and with benefit to himself occupy or improve his allotment or any part thereof the same may be leased upon such terms, regulations and conditions as shall be prescribed by such Secretary, for a term not exceeding three years for farming or grazing, or ten years for mining purposes: provided, that where lands are occupied by Indians who have bought and paid for the same, and which lands are not needed for farming or agricultural purposes, and are not desired for individual allotments, the same may be leased by authority of the council speaking for such Indians, for a period not to exceed five years for grazing, or ten years for mining purposes in such quantities and upon such terms and conditions as the agent in charge of such reservation may recommend, subject to the approval of the Secretary of the Interior."

Criticism is directed to the allegation of the indictment that Sharp, as such officer, etc., "had charge of the execution and completion of certain leases," etc., when their execution and completion rested ultimately with the Department of the Interior. The fur-

ther allegation of the indictment, however, is that "the execution and completion of which leases were then and there pending before him in his official capacity aforesaid, and in his place of trust as such officer and as such person acting for and on behalf of the United States, under the authority aforesaid." As such lands could be leased "in such quantities and upon such terms and conditions as the agent in charge of such reservation may recommend," this officer performed an important part and trust in effecting the leases. As he was on the ground, representing the government, on the one hand, and on the other the Indians, as the wards of the government, the department at Washington depended upon his action and trusted to his fidelity in making the recommendations for the consummation of the lease contracts. The fact that the lands could and probably would be leased in such quantities and on such terms as this agent recommended made him such a factor in the execution of the leases as to charge him with an official trust "in the execution and completion of [the] certain leases." The legal effect of the allegations of the indictment is that the matter of making the leases was committed to the Indian agent for execution and completion, and that he solicited and accepted bribes to influence his action in recommending them to the department for approval. The gravamen of his offense was not the making, executing, or recommending the leases, but the acceptance and solicitation of bribes to influence his official conduct.

The remaining error assigned is that the grand jury which returned the indictment was not properly and legally constituted, and that the trial court committed error in overruling the motion of the plaintiff in error to set aside the indictment. The statutory provisions for the selection and organization of the grand jury are sui generis, specific, and mandatory. The statute of 1893, § 3093 (1), prescribes the qualifications of electors and jurors. No juror can be summoned except by order of the District Court to the clerk. Section 3098 (6) requires that the county clerk, at the time of preparing the pollbooks for election in the different precincts of the county, shall have printed thereon a blank form of oath to be taken by the judges of election of each precinct, to the effect that when the polls are closed, and at the time of making a poll of the votes cast, they would examine the list of names on the pollbooks, and therefrom select a given number of names, and return the same to the county clerk, to serve as jurors; that in making such selection they would select only such persons as are known to them to be of good moral character, sound judgment, and unquestionable integrity; that they would not select any person in the habit of becoming intoxicated, or who has been convicted of any felony, or is engaged in the sale of intoxicating liquors, or known to be a participant or engaged in any unlawful business, or whom they believe could be bribed, or who are of doubtful qualification as jurors. This oath was to be administered to the judges of election by the person swearing them in as judges. The statute further imposed upon the county clerk the duty, before said pollbooks were delivered to the judges, of estimating the number of jurors that

138 F.—56

would be required to be drawn from each election precinct to make up the number of 350, in the ratio the vote cast in any election precinct at the last general election bears to the whole vote cast in the county, and to order the judges of election to return that number. If the election precincts be changed, then the county clerk must estimate the number of jurors to be drawn in the newly established precinct as best he could, by taking into consideration the territory embraced and the number of votes cast in the precinct or precinct of which the new precinct forms a part, and fill in the blank oath on the pollbooks the number of jurors so ordered for each precinct. It further commanded that at the close of the election, and when the ballots were counted, the judges of election should examine the list of names on the pollbooks, and under their oaths select the number of persons designated by the clerk, with the qualifications aforesaid, as jurors, and make a list of the same, sign it under their hands, and return it to the clerk. When received by the clerk it was made his duty to write out all the names returned on separate slips of paper, and place them in the box with a lock and key, and keep the same locked, and from the names so placed in the box the grand and petit jurors should be drawn. "The names first drawn shall constitute the grand jury and the latter the petit jury for the term, to which they are drawn. If from any cause the judges of election shall fail to make returns of jurors from their precincts, it shall be the duty of the county commissioners to take the poll books returned from that precinct and to select the number of persons required to serve as jurors from that precinct. * * * Provided, however, that no indictment shall be set aside for the reason that such indictment was found by a grand jury drawn from a list containing more or less than three hundred and fifty names." The general statute respecting grand jurors and indictments prescribes the grounds of challenge to grand jurors. It declares inter alia that neither the territory nor the person indicted could take advantage of any objection to the panel or to an individual grand juror unless it be by challenge before the grand jury is sworn, except that after the grand jury is sworn, before indictment found, the court, in its discretion, upon good cause, may receive and allow the challenge.

It would seem that because of the peculiar conditions which arose in the selection of grand jurors in the territory, and to prevent what, in the opinion of the Legislature, constituted some abuses in the organization of the grand jury to bring about indictments, the Legislature in 1895 (Sess. Laws 1895, p. 193, c. 41) amended the existing statute as follows:

"No grand juror who has not made known his excuse to the office[r] summoning him shall be excused unless it be made clearly to appear that he is wholly unable to attend and perform the duties of a grand juror. The officer returning a juror not found or unable to serve, must by affidavit set out in full the facts relating to each juror so returned, must swear to and file the same with the clerk of the court where it shall be preserved. False swearing in such affidavits shall constitute perjury. If a sufficient number of grand jurors fail to appear, or be unable to serve, there shall be drawn from the jury box the names of other persons in the same manner, and they

shall be summoned and the panel thus filled. The persons selected and empaneled for a federal grand jury may be empaneled and sworn as a territorial grand jury."

This amendatory act further declared (page 196) inter alia that:

"The indictment must be set aside by the court in which the defendant is arraigned, and upon his motion in either of the following cases: First, when it is not found, endorsed, presented, or filed, as prescribed by the statutes of the territory, or when the grand jury is not drawn or empaneled as provided by law, and that fact is known to the defendant at or before the time the jury is sworn to try the cause. * * * When a grand juror has been fully examined as to his qualifications to sit, and has answered under oath that he is qualified, and has been received by the court and permitted to act, his incompetency shall not thereafter be shown as a ground of objection to any indictment returned by that grand jury."

Section 5111 of the former statute was amended as follows:

"If the motion to set aside the indictment be not made, the defendant is precluded from afterwards taking the objections mentioned in the last section except the one that the grand jury was not drawn and empaneled as provided by law, and that may be shown as ground for new trial, when a showing is made that those facts were not known to the defendant or his counsel until after the jury was sworn for the trial of the cause." Laws 1895, p. 197, c. 41.

Upon the return of the indictment in question into court the plaintiff in error challenged it by motion, duly sworn to. As the facts set up and sworn to in said motion were not controverted, they stand as admitted. Neal v. Delaware, 103 U. S. 394, 395, 26 L. Ed. 567. Among other things, it showed that the clerk, in sending out to the judges of election the number of jurors to be drawn from the ballot boxes, failed to accompany it with the form of oath to be taken by said judges, and that such oath was not in fact taken or returned by them as by statute provided. The motion further showed that the clerk of the court, prior to the general election at which the grand jurors in question were drawn, made only a partial apportionment of the jurors in the voting precincts, and did not apportion them among all the precincts, as by statute directed; that he instructed the judges of election in the Second Ward of the city of Perry to return only 21 jurors, when there were 250 votes cast in said ward, making 1 juror to every $11^{19}/_{21}$ population, which instructions were complied with; that at another precinct said clerk instructed the judges to return 21 names as jurors, which was short of the number to be apportioned; that prior to the general election the town of Billings was organized in said county, and the inhabitants thereof were qualified to vote and to take part in said election, and did so participate, casting 136 votes; that it constituted a voting precinct, and was a part of what was formerly known as Bunch Creek township, a voting precinct in the county; that by note or memorandum entered on the pollbooks said county clerk directed the judges of election not to return any jurors from said town, which directions were followed, and no jurors were otherwise selected from said town or voting precinct and placed in the jury box.

If the county clerk could thus disregard the imperative requirements of the statute in these important particulars, he could thwart

the will of the Legislature in writing them into the statute. The evident purpose of the Legislature was, first, to put the judges of election upon their conscience, under the pains and penalties of perjury, in pursuing the course prescribed by the statute in selecting and placing the names of jurors in the jury box. In the second place, it was to prevent the packing of juries by drawing them from particular communities, by requiring the list to be made up, proportioned to the number of voters in each precinct in the county. If the clerk of the court could direct the judges of election to omit one precinct or another from which the jury list should be drawn, he could, by the same assumption, designate what particular precincts from which the selection should be made. This the law governing his action interdicted.

The motion to set aside the indictment disclosed the further fact that on the suggestion of the attorney for the government the court excused two of the grand jurors called—one for the reason that, in the court's opinion, he had not lived sufficiently long in the county, when the only evidence on the examination showed that the juror was qualified in that respect. Another juror, on the suggestion of the prosecuting attorney, was excused by the court on the ground that, being in the employ of another person as a driver of a wagon and team, he sometimes, under direction of his employer, hauled beer for delivery to customers of his employer. The disqualification of grand jurors, imposed by the statute, pertaining to the subject-matter of liquor, is as to "any person licensed to sell liquor, or a habitual drunkard." As this juror was not shown to be either, his exclusion was illegal. The right of peremptory challenge either to the array or poll does not exist at common law. It must therefore follow that such challenge obtains only for the causes specified in the statute, to be exercised by the persons therein named. Thompson & Merriam on Juries, 519; Jones v. State, 2 Blackf. (Ind.) 475; State v. Davis, 22 Minn. 423; Keitler v. State, 4 G. Greene, 291. The statute of Oklahoma Territory does not confer such right on the prosecutor for the government. And while it may be conceded, for the purposes of this case, that at common law a large measure of discretion may be and ought to be intrusted to the presiding judge, in exercising a supervisory jurisdiction over the constitution of juries, to keep the array and panel as free as possible from improper characters, such as seem to him would impair the morale of the body, and that this discretion ought not to be interfered with by the reviewing court where it does not appear that any essential injustice to the accused resulted therefrom, yet if it be that the local Legislature has interdicted or limited this right, for reasons satisfactory to itself, the logical presumption is conclusive that it is hurtful to the defendant when the statute is not obeyed. The amendatory statute of 1895, as above quoted, expressly declares that "the indictment must be set aside by the court in which the defendant is arraigned upon his motion * * * when the grand jury was not drawn and empaneled as provided by law," and that fact is known to the defendant at or before the time the jury is sworn to try the cause. As evidence of the positive purpose

of the Legislature to make this statute effective, beyond any discretion of the court, the amended statute of 1895 declared that, if the motion to set aside the indictment be not made, the defendant is precluded from afterwards taking the objection above mentioned, "except the one that the grand jury was not drawn and empaneled as provided by law, and that may be shown as ground for new trial when a showing is made that those facts were not known to the defendant or his counsel until after the jury was sworn for the trial of the cause." The grand jury was not drawn as the statute commands. It also commanded that "the names first drawn shall constitute the grand jury." When, therefore, the court, contrary to the policy of the statute, peremptorily excused and discharged from the array two qualified jurors, in the order in which they were called, and substituted others below them on the list, "the names first drawn" did not enter into the constitution of the grand jury, and therefore, "the grand jury is [was] not drawn and empaneled as provided by law." As the statute, in unmistakable terms, declares that for such causes the indictment must be set aside by the court in which the defendant is arraigned, upon his motion, and such motion was timely made, it does not admit of debate that the court erred in denying the motion.

Whatever may be the personal views of this court of such extreme legislative acts, whereby the interest of public justice in the particular case may be thwarted in the escape of an offender, and however unseemly it may appear to the court that the legislative branch of the territory should thus express such lack of confidence in the integrity and judicial discretion of the judges of its courts, the policy of such enactments rests with the legislative department, which the judicial department can neither control nor disregard.

It is true, as suggested by the attorney for the government, that the Supreme Court of the territory reached a different conclusion in construing the statutes in question; but, as the rulings of that court are by statute made reviewable by this court, its construction placed upon the local statutes of the territory is not conclusive.

Other objections are urged against the proceedings in the court below, which we deem it neither necessary nor expedient to discuss.

It results that the action of the Supreme Court of Oklahoma Territory in affirming the judgment of the district court, and the action of the district court in denying the motion to set aside the judgment, are reversed, and the case is remanded, with directions to the district court to set aside the judgment of conviction and to set aside the indictment, and for further proceedings in conformity with this opinion.