## S. C. CAVETT V. TERRITORY.

No. 1983, Okla. T. Opinion Filed December 23, 1908.

(98 Pac. 890.)

1. GRAND JURY—Summoning Talesmen—Common Law. It was not error, at the time this case was tried in the court below, to summon a grand jury by means of an open venire issued to the United States marshal of the county to summon a grand jury from the body of the county, when the names were exhausted from the regular jury box of the county.

2. SAME. The district courts of the territory of Oklahoma possessed common-law jurisdiction, and had the power to invoke the common-

law method of summoning grand juries, when the list of names selected as jurors for the county were exhausted, and the jury box was empty. (Syllabus by the Court.)

*Error from District Court, Pottawatomie County; B. F. Burwell, Judge.*

S. C. Cavett was convicted of manslaughter in the second degree, and he brings error. Affirmed.

The accused was by the grand jury of Pottawatomie county, Okla., at the September, 1904, term of the district court of said county, indicted for the crime of murder. Upon being arraigned, he asked for and was given time in which to plead to said indict-- ment. On the 4th day of October, 1904, he filed in said court a general demurrer to the sufficiency of the indictment. This demurrer was overruled, to which ruling the accused duly excepted, and on the same day filed in said court his motion to quash and set aside the indictment for the following reasons:

"First. Because said indictment was not found, indorsed, presented, and filed as prescribed by the statutes in such case made and provided. Second. Because the grand jury which found and presented said indictment was not drawn and impaneled as provided by law."

The motion to quash and set aside the indictment was heard upon a statement of facts, agreed to by counsel for both the accused and the territory, which agreement is in the words following, to-wit:

"It is hereby agreed by the attorneys for the territory and the defendant, S. C. Cavett, on trial for murder, on the hearing of the motion of the defendant to set aside the indictment, that the court may decide this motion upon the following statement of facts: That the grand jury that returned the indictment in this case was summoned by the deputy marshal on an open venire, the names of the jurors, at the date of the summoning of this jury, having been exhausted from the jury box; that among the names of jurors returned by said deputy marshal was the name of J. R. Pring, who was excused from jury service—from sitting on the jury—by the court, without assigning any reason therefor, which was placed upon the record."

There apperas in the record, following said stipulation, this statement by the court below:

"I will state to counsel that, in the event the record is made out in this case, the court will formulate a statement, and give the reasons why this juror was excused."

Said last-named motion was also overruled, to which ruling the accused duly excepted, and thereupon entered his plea of not guilty.

Thereafter, on the 5th day of July, 1905, put upon his trial upon said indictment, the accused was convicted of the crime of manslaughter in the second degree, and in due time filed his motion to set aside the verdict and grant him a new trial, for the following reasons: (1) Because the verdict was contrary to the evidence; (2) because the verdict was contrary to the law; (3) because the court misdirected the jury in matters of law occurring during the trial; and (4) because the court erred in the decision of questions of law arising during the course of the trial. Said motion was overruled, to which ruling the accused duly excepted, and filed his further motion to set aside the verdict against him and arrest the judgment therein, for the reason:

"The grand jury which found and presented said indictment was not constituted in manner required by law, and was illegally constituted and without authority or jurisdiction to find and present said indictment."

Both of said motions being overruled, to which rulings the accused duly excepted. Thereupon the court, entering judgment upon said verdict, sentenced the accused to be imprisoned in the territorial penitentiary at Lansing, state of Kansas for a term of three years.

*Roy Hoffman, J. B. A. Robertson,* and *S. A. Cordell,* for plaintiff in error.—

On question of legality of grand jury: Statutes of Oklahoma 1893, Secs. 3093—3095, 3098, 3100—3102, 5025-5033, 5036, 5037, 5045; Session Laws 1895, c. 41, art. 1, secs. 13-15, 19, 20; *Sharpe v. U. S.* 138 Fed. 881; *Ex parte Farley,* 40 Fed. 66; *Clinton v. Engelbrecht,* 13 Wall. 424; *Clough v. Curtis,* 134 U. S. 361.

*Charles West,* Atty Gen., and *W. C. Reeves,* Asst. Atty. Gen., for the Territory.—

On question of legality of grand jury: Wilson's Rev. & Ann. St., secs. 4200, 5151; *Goodson v. U. S., 7* Okla. 117; *Moran v. Territory, 14* Okla. 544.

On question of sufficiency of indictment: *Walcher v. Territory, 18* Okla. 528.

BAKER, JUDGE (after stating the facts as above). Complete and instructive briefs were filed on both sides in this case. The accused urges the following assignments of error: First, the court erred in overruling motion for new trial; second, in overruling motion in arrest of judgment; third, in giving erroneous and misleading instructions to the jury; fourth, in overruling demurrer to the indictment; fifth, in not sustaining the motion to quash and set aside the indictment; sixth, in admitting evidence on the part of the territory which is incompetent, irrelevant, immaterial, and prejudicial to the rights and interests of the accused; seventh, in refusing and ruling out competent legal evidence offered by the accused; eighth, in misdirecting the jury on questions of law; and, ninth, in ruling on questions of evidence at the trial—all of which errors were excepted to by the accused at the time.

Taking up the assignments of error stated in the brief of the accused, we are confronted, first, with the proposition: Was the grand jury that found the indictment against the accused legally constituted and impaneled? It is urged by the accused that it was error for the court to direct a deputy sheriff, by means of an open venire, to summon a grand jury for said court from the body of the county, notwithstanding the names constituting the regularly selected jurors to act as grand and petit jurors for said county for said term had become exhausted, and the jury box of said county was empty, and urge with much apparent confidence that said grand jury should have been selected in all respects as required by the then existing jury statutes of the territory of Oklahoma, and that any deviation from said statutes in the manner of selecting a grand jury would be prejudicial error and entitle the accused to a new trial. We have carefully read all the statutes cited by the accused, as well as sections 4200 and 5151, Wilson's Rev. & Ann. St. Okla. 1903, which provide:

."Section 4200. The common law, as modified by constitutional and statutory law, judicial decisions and the conditions and wants of the people, shall remain in force in aid of the general statutes of Oklahoma. * * *"

"Sec. 5151. The procedure, practice and pleadings in the district courts of this territory, in criminal nature, not specifically provided for in this chapter, shall be in accordance with the procedure, practice and pleadings of the common law, and assimilated as near as may be with the procedure, practice and pleadings of the United States or federal side of said court."

The record in this case shows that, when the district court of Pottawatomie county reached the case at bar, the names of jurors provided under the various statutes of said territory had become exhausted, and the jury box of said county was empty. It is urged by the accused that the statutes pertaining to the selection of names for jurors of said county should have been enforced. In the light of section 4200, above quoted, and the decisions of the Supreme Court of the territory of Oklahoma, and the authorities hereinafter cited, this court thinks it was unnecessary to do so, and that the common-law method of selecting a jury could legally be resorted to, and that it was not error in this case to summon the grand jury by means of an open venire from the body of the county, that the grand jury in this case was in all respects a legal one, and the rights and interests of the accused in no way injuriously or prejudicially affected.

The Supreme Court of Oklahoma Territory, in the case of *Goodson v. United States,* 7 Okla. 146, 54 Pac. 423, 432, held:

"Our district courts are courts of common-law jurisdiction, and under the foregoing statutory provisions (sections 4200 and 5151, Wilson's Rev. & Ann. St. 1903) may resort to the common law in any matter of practice where the statutory method of procedure is inapplicable, or in any case where specific provision is not made for the practice by the statutes."

The above rule has been followed and approved by the court in the following later case: *Smith et al. v. Territory of Oklahoma,* 14 Okla. 518, 79 Pac. 214. In this case the court say:

"The district courts of Oklahoma possess common-law jurisdiction, and these courts have the power and authority to invoke

the common-law method of summoning a grand jury when no other provision is made by the statute, or when the provision so made is inadequate."

It is ably contended by counsel for the accused that the district courts of the territory of Oklahoma are the creatures of statute, and have no jurisdiction except that which is specifically granted them by the statute, and that said court could do no legal act except in compliance with the statutes. This is not the view taken by the Supreme Court of the territory of Oklahoma, nor is it so held by the Supreme Court of the United States. We find a very well-considered and ably decided case practically on "all-fours" with the case at bar in *Clawson v. United States,* 114 U. S. 477, 5 Sup. Ct. 949, 29 L. Ed. 179 (a Utah case). The examination of this case discloses the fact that under section 4 of the act of Congress dated June 23, 1874 (chapter 469, 18 Stat. 254), which relates to courts and judicial officers in the territory of Utah, which statute provides for the selection of a jury, is very much like the provisions of the statutes in force in Oklahoma Territory at the time this case was tried below. The court in this case held, on the trial of an indictment, the names in the jury box of 200 jurors, provided for by said act, being exhausted when the jury to try this case was being impaneled, that the district court legally issued an open venire to the United States marshal of the territory, to summon jurors from the body of the judicial district, and the jury was composed of persons thus summoned. The syllabus of the case reads:

"In the trial of an indictment, if the names in the jury box of 200 jurors provided for by statutes are exhausted when the jury is only partly impaneled, the district court may issue a venire to the United States marshal for the territory to summon jurors from the body of the judicial district, and the jury may be completed from persons thus summoned."

Mr. Justice Blatchford, speaking for the court, says:

"It is assigned for error that the petit jury was illegally constituted, in that the court had no right to summon petit jurors on an open venire. The argument is: That the provisions of section 4 of the act of June 23, 1874, are, on their face, exclusive; that

the method prescribed by that section for obtaining jurors is the only one that can be employed; that only the probate judge and the clerk of the court can select the jurors and make the jury list; that the grand and petit jurors for a term must be drawn by the marshal from a box containing names of persons thus selected, and constitute the regular grand and petit juries for the term; that if, during the term, any additional grand or petit jurors are necessary, they must be drawn by the marshal in open court from the same box; and that if the 200 names are all drawn out, for grand or petit jurors, at any time during the year, there can be no more indictments found or any more civil or criminal jury trials had in the court of the district for the rest of the year because it is provided in section 4 that the jurors drawn from the box shall be jurors only for the term, of which there are four in the year; and that the names drawn shall not be again placed in the box until a new jury list is made, which is to be done annually in January."

Further commenting in the opinion, the learnéd justice says:

"But the act does not directly or by implication or intendment exclude the use of an open venire when the 200 names are exhausted during the year. * * * There is no doubt that jurors must be drawn from the 200 names; or those of them remaining in the box, so long as any remain; but the question is: What is to be done when these names are exhausted, if there is no method that can be resorted to to obtain jurors?"

See 1 Chit. Crim. Law, 518; 2 Hale, P. C. 265, 266; *United States v. Hill,* 1 Brock. 156, Fed. Cas. No. 15,364; *Mackey v. People,* 2 Colo. 13; *Stone v. People,* 2 Scam. (Ill.) 326; *Straughan v. State,* 16 Ark. 36-43; *Wilburn v. State,* 21 Ark. 198, 201; *Gibson v. Com.,* 2 Va. Cases. 111-121; *Shaffer v. State,* 1 How. (Miss.) 238; *Woodsides v. State,* 2 How. (Miss.) 655; *State v. Harris* (Supreme Court of Iowa September, 1884) 17 Chi. Leg. N. 58.

It is a well-recognized legal principle that a venire to summon jurors is a writ necessary to the exercise of the jurisdiction of the court and agreeable to the usages of law. Therefore where it is not forbidden or excluded, and where the affirmative provisions of the law have, so far as they extend, been first observed, the open venire will in such case issue. The doctrine just stated is up-

held and approved in the case of *Moran v. Territory of Oklahoma,* 14 Okla. 544, 78 Pac. 111.

The able counsel for the accused rely strongly upon the case of *Sharp v. United States,* 138 Fed. 881, 71 C. C. A. 258. This court is unable to agree with counsel for the accused that this case is in any manner analogous with the case at bar, for the very apparent reason that the decision in the *Sharp Case* was based entirely upon irregularity in drawing and impaneling the jury, which was undertaken to be done under the provisions of Wilson's Rev. & Ann. St. 1903, c. 46. In the *Sharp Case,* the list selected as provided by said chapter had not become exhausted, while, in the case at bar, the names of the jurors returned by the selection board, as provided by said statute, had been exhausted, and the box was empty, and the court impaneled the jury in the case at bar under the common law, by means of the open venire complained of by the accused. We think that, under the circumstances prevailing in the case at bar, there was nothing in the record to show that the substantial rights of the accused were in any manner affected by summoning on the jury that indicted the accused persons disqualified for any cause. No such claim is made, and the record shows that all the jurors were men well qualified to act as grand jurors. The accused was in no manner injured in his substantial rights.

The accused complains that the court below erred in releasing from grand jury service one J. R. Pring, who had been summoned to serve as a grand juror, at the term of the court at which the indictment against the accused in the case at bar was returned, and he bases his complaint entirely upon the proposition that the court, in releasing said juror from such service, did not enter his reasons of record. Not that if the reason had been entered, that it would disclose an improper or unlawful reason but simply urges that the court erred because some reason was not entered of record. The record shows that the trial court did not enter of record at the time of the discharge of said juror from service, his reason for such discharge, but entered in the record the following statement: "If desired by the accused I will formulate a statement and give

the reasons why the juror (referring to Pring) was excused." This court presumes that, inasmuch as the court below offered to enter its reason for the release of said juror of record, if the accused desired, and the accused not having requested the court to enter such reason of record, the reason for the discharge of said juror was in fact good and legal, and not prejudicial to the rights of the accused, and if the court's reasons for such discharge were in fact illegal, insufficient, and prejudicial to the accused, he would have had such alleged reasons appear of record in order that this court would thereby be fully advised of the error of said court, and the rights of the accused fully protected. The accused has waived any right he may have had growing out of the action of the court below in releasing said juror, by not requesting the court below to enter or record the reasons, if any, for such release. The rights of the accused therefore have not been abridged or prejudiced in the release of said juror.

The accused also urges that the court committed error in overruling both the demurrer to the indictment herein and the motion to quash and set aside the indictment. The reasons assigned by the accused in both the demurrer and the motion being practically the same and raising the same questions of law, we will consider them together. The accused urges, in his demurrer, in substance that the indictment does not substantially conform with the requirements of article 7, c. 68, Cr. Proc. (Wilson's Rev. & Ann. St. Okla. 1903, §§ 5349-5378), that more than one offense is charged in the indictment, that the facts in the indictment do not constitute a public offense, and that the indictment does not set out the offense attempted to be charged in such plain language as it would enable a person of common understanding to know what is to be meant. This brings us to a consideration of the statute defining the crime of murder. Section 2167, Wilson's Rev. & Ann. St. Okla. 1903, defines homicide as follows:

"When a person without authority of law and with a premeditated design to effect the death of the person killed, or any other human being."

The statute just quoted gives a plain and correct definition of murder. Therefore, if the homicide complained of is a result of a premeditated design to effect the death of the person killed, and is without authority of the law, it is murder, and can be alleged and described in plain ordinary words. It is self-evident, from the reading of the indictment in this case, that it contains about all the unnecessary and redundant verbiage that a lawyer, skilled as a pleader, is capaole of incorporating into a charge without actually invalidating it. We do not, by any means, commend this indict- ment, and sincerely hope that it will not be followed. It is not an exhibition of good pleading by any means, but, nevertheless, we think it charges fully the crime of murder, as defined by the stat- ute, and, when shorn of the unnecessary words in it contained, it alleges, substantially, that S. C. Cavett, late of Pottawatomie county, Okla., willfully, purposely, and feloniously, and of his de- liberate and premeditated malice, and without authority of law, and with a premeditated design to effect the death of one Gilli- land, did make an assault upon the body of him, the said J. A. Gil- liland, with intent him, the said J. A. Gilliland, willfully, unlaw- fully, and feloniously, and purposely, and of his deliberate and premeditated malice to kill and murder, and that he did kill said J. A. Gilliland. If the above averments can be fairly gathered from the statements embraced in the indictment, then, in the opinion of this court, it sufficiently charges the crime of murder.

The sufficiency of this indictment seems to be well settled in an able opinion rendered by Chief Justice Burford in the case of *James Walcher v. Territory of Oklahoma,* found in 18 Okla., at page 528, 90 Pac., at page 887, in which the court said:

"The facts necessary to be alleged are: First, that James Walcher shot and killed John F. Stone in Kingfisher county, Okla.; second, that he shot him with a loaded gun; third, that he discharged the gun at the deceased with a premeditated design to take his life. If these three material everments can be gathered from the profuse and confused averments embraced in the indict- ment, then it sufficiently charges the crime of murder.  *   *   *"

It cannot be successfully claimed in this case that the indict- ment omitted any one of the three necessary ingredients or aver-

ments. The indictment in this case can well be analyzed, in plain, modern, common-sense English, to mean this: That on the 13th day of August, 1904, in Pottawatomie county, Oklahoma Territory, S. C. Cavett made an assault upon J. A. Gilliland with the intent to kill and murder him; that said S. C. Cavett then and there unlawfully, purposely, and of his deliberate and premeditated malice with intent to kill J. A. Gilliland, with a certain knife, cut, stabbed, and mortally wounded said J. A. Gilliland then and there giving said J. A. Gilliland with intent aforesaid, two mortal wounds, from which the said J. A. Gilliland died. This court is therefore of the opinion, and so holds, that said indictment charges the crime of murder. This court also finds that the indictment in this case was properly found, indorsed, presented, and filed as prescribed by law and that but one offense is therein charged.

The next error complained of is that the court erred in permitting counsel for the prosecution to indorse the list of names of witnesses on the indictment after such counsel had made his statement to the jury, and after such jury had been sworn to try the case. From an examination of the record it appears that some 60 or more names of persons who had been examined before the grand jury, were indorsed on the indictment, and it nowhere appears in the record what names, if any, were added to said list after the trial of this case had been commenced, and the record is absolutely silent as to how the accused was or could have been prejudiced in his substantial and material rights in the indorsement of such names, and we have not been able to find any well-considered authority that holds that, in the absence of a showing in the record, the accused was prejudiced by the indorsement of such names, or that the mere adding and indorsing additional names on the indictment was prejudicial error.

This brings us to the fifth assignment of error, which is directed against the two instructions of the court, namely, charge No. 19 and charge No. 20. They are as follows:

"Instruction No. 19. Evidence had been introduced by the defendant for the purpose of showing that the deceased, just prior to the difficulty, and after the difficulty, on the street by the

bank, was looking for the defendant in different places of business in the town of McLoud; and in this connection, if you find that he was looking for the defendant for the purpose of having a difficulty with him, even this would not justify the defendant striking the deceased with the knife, unless, at or just prior to such time, the deceased made demonstration such as would reasonably cause the defendant to believe that the deceased was about to shoot him or to do him bodily harm, and that it reasonably appeared necessary to the defendant to strike in defense of his own person.

"Instruction No 20. You are further instructed that one is not justified in assaulting another through mere fear, cowardice, or malice, but the law requires that he act with reasonable courage, taking into consideration his age, experience, temperament, and all other matters disclosed upon trial, tending to show as to whether or not, situated as the defendant was, and viewing the transaction from his standpoint and with his knowledge and information, he had reasonable ground for fear of bodily harm. Before one is justified in assaulting another, he must reasonably believe that he is in danger of receiving bodily harm at the hands of his adversary."

The court finds, after carefully reading all the evidence disclosed by the record, which is very voluminous, and in many instances contains much cumulative evidence and many repetitions, the evidence with reference to the facts showing the conduct of the parties on the day of the homicide, and the occurrences of that day, and a short time prior to, and at the time of the tragedy, are substantially undisputed except in a few minor details. It is clearly shown by the evidence that the accused and the deceased were brothers-in-law, and some years prior to the killing had many quarrels and misunderstandings, which in each instance, it appears from the evidence, were forgiven on both sides and good will between the parties always restored. The testimony also shows that the deceased made many threats against the accused; but that they had not been taken seriously by the accused is shown by his testimony, in which he says, in answer to questions, as shown on page 309 of the record:

"How long was it after you had your trouble somewhere about four years ago until your friendly relations were established again? Answer. Why, right away—just a day or so. Q. Then

did you and he continue on speaking terms and friendly so far as you know up to the time of this trouble? A. Yes, sir."

It is apparent from the evidence that the threats made by tnc deceased could have made but little impression upon the mind of the accused, and engendered but little fear in his breast, and it is clearly shown that, on the day of the killing, the accused met the deceased upon one of the main business corners of the principal business streets of the town of McLoud The accused, being armed with a knife (and apparently the same knife that afterwards inflicted the mortal wound upon the deceased), assaulted the de-. ceased by making demonstrations with his knife toward the deceased. The accused and the deceased, upon parting, threatened one another The accused, if not actually looking for trouble with the deceased, was taking no steps whatever to prevent it. After the meeting at the bank corner of the day of the killing, and a short time before the tragedy, the accused went to the saloon of his brother, Bud Cavett, in said town, and the deceased went to a hardware store and purchased a pistol, and then went to the front of the saloon where the accused had gone: The accused was inside of the saloon in a back room when the deceased reached the front door of the saloon. In the saloon with the accused was his brother and little son. At the particular moment . that the deceased reached the front door of the saloon, the town marshall of McLoud stood in the front door. For the deceased and the accused to get together at that particular time, it was necessary for either one or the other to pass the city marshal. The accused, being armed with a knife, instead of seeking to prevent a personal encounter with the deceased, who was then armed with a pistol (which the accused says he knew), rushed out of the front door into danger, passing the marshal on his way to his victim, struck the deceased on the top of the head with some hard instrument, the blow causing the deceased to immediately drop his pistol and fall on "all fours" to the sidewalk, after which the accused immediately inflicted the mortal wounds.

The jury, from the testimony, were justified in believing that the accused was looking for trouble, was the aggressor, as he

had been on the street before, instead of avoiding trouble and possibly the necessity for taking life, by going out of the back door of the saloon, and thus avoiding the deceased, and taking steps to protect himself from the violent action of the deceased by having him put under a peace bond, and giving him time for his mind to cool and restore friendship, which had, according to the testimony, been often done before. The court is therefore of the opinion that the court below properly instructed the jury, predicated upon the testimony shown by the record, and that the jury was fully authorized in rendering a verdict of manslaughter in this case, and that the whole charge, including the two instructions complained of, was in all respects a fair, proper, and legal charge in the light of the evidence, and was not prejudicial, and in all respects properly safeguarded the legal rights of the accused. Reading the whole charge carefully, and then reading the two instructions complained of in connection therewith, we are unable to find how it was possible that the instructions complained of could be prejudicial to the rights of the accused.

We fail to find that the court erred in admitting or rejecting evidence offered on either side in this case, and finding that the accused had in all respects a fair and impartial trial, and finding no prejudicial error in the record, we affirm the judgment of the court below at the costs of the accused, and direct the sheriff of Pottawatomie county, Okla., to carry the judgment of the lower court into effect immediately.

FURMAN, Presiding Judge, and DOYLE, Judge, concur.

## On Motion For Rehearing.

PER CURIAM. The plaintiff in error filed his motion for rehearing herein, in which he contends: That the judgment of the district court in this case is wrong, and that the decision of the court affirming the same is therefore wrong, and both should be reversed, for the reason that the judgment of this court delivered December 23d last, is contrary to the law, and is not sustained by the law. That said decision was rendered under a misapprehension of the law.

The petition for rehearing sets forth a lengthy discussion of the authorities relied upon by the plaintiff in error, and lays special stress upon the claim. that the grand jury in the case at bar was impaneled contrary to law and in contravention of the doctrine laid down by the United Circuit Court of Appeals in the case of *Sharpe v. United States,* 138 Fed. 881, 71 C. C. 258. That this court disregarded in its decision of this case that portion of section 4200 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903, which reads as follows:

"But the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

Counsel for the accused urge at length, in the petition for rehearing, that this court, in considering the case of *Clawson v. United States,* 114 U. S. 477, 5 Sup. Ct. 949, 29 L. Ed. 179, overlooked the distinction between that case and the case at bar, insomuch as in the *Clawson Case* the jury complained of was a petit jury, and in this case the jury complained of was a grand jury. The accused also contends that this court gave consideration to cases that were decided by the courts of the territory of Oklahoma prior to June 12, 1905, the date of the decision of the *Sharpe Case, supra.* Counsel for the accused in the petition for rehearing raise no new questions, nor do they cite any additional authorities. All the questions raised by the petition for rehearing were urged in the brief of the accused filed in support of the petition in error, and were fully and carefully considered by this court.

This court, after again fully considering this case and all the authorities cited by the able counsel for the accused, and carefully considering the allegations of the petition for rehearing, and the authorities therein cited, is still of the opinion that there was no prejudicial error in the record, and that all the material rights of the accused have been fully respected and protected, and that the decision of this court handed down on the 23d of December, 1908, is just and proper, and therefore the petition for rehearing should be, and the same is, hereby overruled.