## BRIGEL et al. v. TUG RIVER COAL & SALT CO.

### (Circuit Court, D. Kentucky. February 29, 1896.)

1. FEDERAL JURISDICTION—DIVERSE CITIZENSHIP—COMMENCEMENT OF SUIT—AMENDMENTS.

    Diverse citizenship, to give jurisdiction, must exist at the commencement of the suit; and, if it exist then, subsequent changes are immaterial. Even if the allegations of the bill fail, in other respects, to state a case within the jurisdiction, and amendments are subsequently made which obviate these objections, the suit will still be deemed to have commenced with the original proceedings, and the court will have jurisdiction, although one of the complainants, before the amendments, became a citizen of the same state with defendant.

2. APPEAL—COSTS—INTERPRETATION OF MANDATE — JUDGMENT AGAINST TRUSTEES.

    Where a judgment for complainants, who sued solely as trustees, was reversed, and the mandate directed that the costs of the appeal should be divided, "appellant to recover costs in the court below," *held*, that the appellate court was to be understood as intending that the judgment for costs should be against the appellees as trustees, and not as individuals.

This was a bill by Leo A. Brigel and Logan C. Murrey, trustees, against the Tug River Coal & Salt Company, the Kentucky & Cincinnati Natural Gas & Fuel Company, and several individuals, to foreclose a mortgage, and for other relief. The defendant the Tug River Coal & Salt Company was the mortgagor, and the other parties were made defendants because they, as judgment creditors or otherwise, claimed an interest in the property; the object being to sell a perfect title by cutting off all adverse rights and liens, and settling all questions of priority in the proceeds of sale. The suit resulted in a decree for complainants. On appeal to the circuit court of appeals the decree was reversed because it did not appear that all the defendants were citizens of different states from complainants, the court reserving the right to complainants to apply for leave to amend the bill so as to show a case within the jurisdiction. 14 C. C. A. 577, 67 Fed. 625. On the return of the case to this court, complainants accordingly amended their bill by dropping all the parties defendant except the mortgagor the Tug River Coal & Salt Company, as more fully appears in the opinion below.

Hollister & Hollister, and Walter A. De Camp, for complainants.

Thos. F. Hargis, and Baxter & Hutchison, for defendant.

BARR, District Judge. The court has heretofore, in June, 1895, allowed the complainants, Leo A. Brigel and Logan C. Murrey, trustees, to amend their bill herein. The effect of this amendment is to drop from the case all of the parties defendant who were originally in the case, except the Tug River Coal & Salt Company. The purpose of

this amendment is, as in the original bill, a foreclosure of the trust deed to Brigel and Murrey, and does not change the nature of the action, except the bill as amended is not for the purpose of marshaling the liens, whether judgment liens or others, which may be against the mortgaged property, but inferior to the mortgage, but simply a foreclosure and sale. The effect of the amendment, as it stands, is to give the court jurisdiction to foreclose the trust deed, as against the Tug River Coal & Salt Company. This amendment was allowed under the authority of the circuit court of appeals, given in the original case, which is reported in 14 C. C. A. 577, 67 Fed. 625. In this amendment it is stated that Leo. A. Brigel, trustee, is a citizen of the state of Ohio, and that Logan C. Murrey, trustee, is a citizen of the state of New York. In the original bill, which was filed March 26, 1892, the same allegation was made.

The defendant the Tug River Coal & Salt Company has filed a plea in which it is alleged that the complainant Logan C. Murrey, trustee, is not a citizen of the state of New York, as in the amended bill alleged, but that said Murrey is, and was at the time said amended bill was filed, and for many months prior to the time at which the judgment heretofore rendered was reversed in the circuit court of appeals, a citizen of the state of Kentucky, and a resident of the city of Louisville, and was a citizen and resident of the same state as the defendant the Tug River Coal & Salt Company at the time said amended bill was filed, and at the time said circuit court of appeals reversed said judgment, and for several months previous thereto. This plea has been set down for argument, and argued, and it must be assumed that the allegations of the plea are true. The plea does not deny the citizenship of Murrey in the state of New York, as alleged in the original bill. Therefore the plea presents the question of whether or not the court has jurisdiction, assuming that Brigel was a citizen of the state of Ohio, and Murrey a citizen of the state of New York, when the original bill was filed and the suit commenced, but is now a citizen of Kentucky, and that the defendant the Tug River Coal & Salt Company was at that time, and still is, a corporation incorporated and organized under the laws of the state of Kentucky. It is settled that if, at the commencement of the suit, the diverse citizenship exists and is alleged, no change of citizenship thereafter will divest the circuit court of jurisdiction. Thus, it is held in Mullen v. Torrance, 9 Wheat. 537, that a plea to the jurisdiction, stating that certain parties to the bill were citizens of the state of Mississippi at the time the plea was filed, was defective, because it did not allege that both were citizens of the same state at the time the action was brought. In Conolly v. Taylor, 2 Pet. 564, it is stated that if an alien should sue a citizen, and should omit to state the character of the parties to the bill, though the court could not exercise jurisdiction while the defect in the bill remained, yet it might be corrected at any time before the hearing, and the court could take jurisdiction. In that case Chief Justice Marshall said:

"The bill is filed in the court of the United States, sitting in Kentucky, by aliens and by a citizen of Pennsylvania. The defendants are citizens of Ken-

tucky, except one, who is a citizen of Ohio, on whom process was served in Ohio. The jurisdiction of the court cannot be questioned, so far as respects the alien plaintiffs. As between the citizen of Pennsylvania and of Ohio, neither of them being a citizen of the state in which the suit was brought, the court could exercise no jurisdiction. Had the cause come on for a hearing in this state of the parties, a decree could not have been made in it, for want of jurisdiction. The name of the citizen plaintiff, however, was struck out of the bill before the cause was brought before the court; and the question is whether the original defect was cured by this circumstance,—whether the court, having jurisdiction over all the parties then in the cause, could make a decree. The counsel for the defendants maintain the negative of this question. They contend that the jurisdiction depends on the state of the parties at the commencement of the suit, and that no subsequent change can give or take it away. They say that, if an alien becomes a citizen pending the suit, the jurisdiction which once vested is not divested by this circumstance. So, if a citizen sue a citizen of the same state, he cannot give jurisdiction by removing himself, and becoming a citizen of a different state. This is true, but the court does not understand the principle to be applicable to the case at bar. Where there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition as it was at the commencement of the suit. The court in the first place had complete original jurisdiction. In the last it had no jurisdiction, either in form or substance. But if an alien should sue a citizen, and should omit to state the character of the parties in the bill, though the court could not exercise its jurisdiction while this defect in the bill remained, yet it might, as in everyday practice, be corrected at any time before the hearing, and the court would not hesitate to decree in the cause. So in this case. The substantial parties plaintiff—those for whom the benefit of the decree is sought—are aliens, and the court has original jurisdiction between them and all the defendants. But they prevented the exercise of this jurisdiction by uniting with themselves a person between whom and one of the defendants the court cannot take jurisdiction. Strike out his name as a complainant, and the impediment is removed to the exercise of that original jurisdiction which the court possessed, between the alien plaintiffs and all the citizen defendants. We can perceive no objection, founded in convenience or in law, to this course."

In the case of Anderson v. Watt, 138 U. S. 694, 11 Sup. Ct. 449, the supreme court, by Chief Justice Fuller, considered and applied the case of Conolly v. Taylor, 2 Pet. 564. In that case the suit was brought by Gustavus W. Faber and James S. Watt, describing themselves as both of the city and state of New York, and citizens of the state of New York, executors of the last will of James Symington, deceased, late of the state of New York, against J. C. Anderson, etc., a citizen of the state of Florida, and also against Sarah J. Davis, a citizen of the state of Florida, for the foreclosure by sale of the property of a mortgage given by E. J. Wilson to James Symington, deceased. One of the material questions in the case was whether or not Sarah J. Davis, who was a married woman, was a citizen of the state of New York, or a citizen of the state of Florida. The court decided that she was a citizen of the state of New York, and therefore of the same citizenship as the plaintiffs. This defect was attempted to be amended during the progress of the case by striking out from the address the words "Gustavus W. Faber and James S. Watt, both of the city and state of New York, and citizens of the state of New York," and inserting therein as follows:

"Gustavus W. Faber, of the city and state of New York, and James S. Watt, a subject of the kingdom of Great Britain, temporarily residing in the city of New York."

It was further ordered that:

"It appearing to the court that letters testamentary on the estate of James Symington, deceased, heretofore issued to Gustavus W. Faber, deceased, one of the complainants herein, suing as one of the executors of James Symington, deceased, have been revoked, as is shown by a duly-exemplified copy of the records of the surrogate court of the county of New York, state of New York, filed herein, it is therefore ordered, adjudged, and decreed, on motion of the complainants herein, that this cause proceed in the name of the said James S. Watt, sole surviving executor of James Symington, deceased, and that it be discontinued as to said Gustavus W. Faber, suing as co-executor."

And the exemplified copy referred to, which was filed, showed that Faber had previously filed a petition in the surrogate's office for a decree revoking the letters testamentary issued to him, and that the decree of revocation had been entered. It was insisted, therefore, that as the suit had progressed, and a decree had gone in favor of Watt, as the sole complainant, who was an alien, there was no jurisdictional defect. The court say on this subject:

"But the difficulty with this attempt to obviate the fatal defect in jurisdiction was that the record showed that Watt was not the sole surviving executor of James Symington when the bill was filed, but, on the contrary, when the application to amend was made, plaintiffs exhibited to the court, and filed in the case, exemplified copies of the records and files in the office of the surrogate of the county of New York in the matter of the application of Gustavus W. Faber for a revocation of the letters testamentary issued to him as one of the executors, by which it was shown that on the 4th of May, 1886, Faber filed his petition for the revocation of the letters as to him, and that the order of revocation was entered on that day. It therefore appeared that Watt could not have maintained the bill as amended on the 25th day of August, 1885, when the bill as originally framed was filed; and the jurisdiction could no more be given to the circuit court by the amendment than if a citizen of Florida had sued another in that court, and subsequently sought to give it jurisdiction by removing from the state."

In the case of Hardenbergh v. Ray, 151 U. S. 112, 14 Sup. Ct. 305, it was held that the jurisdiction once attached between citizens of different states is not defeated by the substitution of other parties who have the same citizenship of the plaintiff. This was a suit in ejectment brought by the claimant against the tenants in possession. Subsequently the landlords were substituted as defendants, who were citizens of the same state as the plaintiff, and the question of jurisdiction was made; and the court held that the test was the diverse citizenship of the original parties, and at the time of the commencement of the suit, and that, therefore, the jurisdiction continued notwithstanding the substituted defendants.

It is, however, insisted in this case that the filing of the amended bill is the commencement of the suit, and that, as this bill makes a defendant a party who is of the same citizenship as one of the complainants, the court has no jurisdiction, and cannot proceed.

In view of the decisions of the supreme court, I think this contention cannot be maintained. In the case of Everhart v. Huntsville College, 120 U. S. 223, 7 Sup. Ct. 555, in which the complainant did not allege citizenship in Wisconsin, but that he was a resident merely, the court, after saying that the suit must be dismissed for want of jurisdiction, as it did not affirmatively appear on the face of the record that there was a diverse citizenship, said:

"If, on the return of this case to the circuit court, it is made to appear that the citizenship necessary for the jurisdiction existed at the time the suit was

brought, it will be for that court to determine whether an amendment to the pleadings ought to be allowed, so as to cure the present defects."

In another case (Insurance Co. v. Rhoads, 119 U. S. 237, 7 Sup. Ct. 193) the suit was brought in the name of the administratrix of Rhoads. It was alleged that:

"Ann Eliza Rhoads, administratrix, etc., of Maris Rhoads, late a citizen of the state of Pennsylvania, deceased, complains of the Continental Life Insurance Company of Hartford, Connecticut, a foreign corporation, incorporated under the laws of the state of Connecticut, and a citizen thereof."

This was held not to be sufficient to give the court jurisdiction. The court say:

"It does appear that the defendant was at the commencement of the suit a citizen of Connecticut, and that the intestate, Maris Rhoads, was at the time of his death a citizen of Pennsylvania; but there is nothing to show the citizenship of the plaintiff, and the jurisdiction depends upon her citizenship, and not on that of her intestate."

The case was dismissed for want of jurisdiction, and the court say:

"If the plaintiff was actually a citizen of Pennsylvania when the suit was begun, the record cannot be amended here so as to show that fact; but the court below may, in its discretion, allow it to be done when the case gets back."

In the case of Menard v. Goggan, 121 U. S. 253, 7 Sup. Ct. 873, which is one where the record did not show the requisite diverse citizenship, the court say:

"If the necessary citizenship actually existed at the time the suit was begun, it will be for the court below to determine when the case gets back whether the record shall be amended so as to show that fact, and thus make out the jurisdiction."

In these cases the court has assumed the suit was commenced when the original proceedings commenced, although the court had no jurisdiction as the record then stood, and required the diverse citizenship to be determined as of the commencement of the suit over which the court then had no jurisdiction.

It is true that I have heretofore decided that suits brought by the receiver, Baldwin, under the order of the court in the original case before amendment, when the court had no jurisdiction, were void, and dismissed those suits; yet this, we think, is a different question from the one now presented, which is as to when is the commencement of a suit, and when is the time when the diverse citizenship should exist. It seems from these and other authorities that the time of the diverse citizenship, to give jurisdiction, is at the commencement of the suit; and that without regard to whether or not the proceeding, on its face, has stated facts sufficient to give the court jurisdiction. If there are not sufficient facts stated to give the jurisdiction, or facts stated which show the court has no jurisdiction, orders made before these statements are amended or changed so as to show jurisdiction in the court would be void, but, when such amendments or changes are made, the question of jurisdiction, if it depends upon diverse citizenship, must relate back to the commencement of the proceeding; and that without regard to whether the original allegations have, or not, shown jurisdiction in the court. If this is not the correct rule, then the authorization of amendments

to proceedings such as in the cases cited, and others (see Morgan's Ex'r v. Gay, 19 Wall. 81; Robertson v. Cease, 97 U. S. 650; and Johnson v. Christian, 125 U. S. 644, 8 Sup. Ct. 989, 1135), is without meaning. If the court is without any jurisdiction, and without authority to allow pleadings to show the jurisdictional facts as existing at the commencement of the suit, or to strike out unnecessary parties which prevent the taking of jurisdiction, the authorizing of amendments is idle, and requiring diverse citizenship to exist at the commencement of void proceedings is without reason, since in that event the commencement of a suit must be when the diverse citizenship is first alleged, and the existence of the requisite citizenship should be as of that time, and not at the commencement of the original proceedings. In this case the complainants and the present defendant were the only necessary parties to a foreclosure proceeding, and all the other parties in the original proceeding were unnecessary. We therefore conclude that the plea is defective, and the facts therein stated, being conceded to be true, do not oust or prevent the court from taking jurisdiction.

The next matter to be disposed of is the motion entered by the complainants, Brigel and Murrey, to modify the judgment heretofore entered on the mandate of the circuit court of appeals so that it shall affirmatively appear that the judgment for costs rendered therein against said Brigel and Murrey be as trustees, and not in their individual capacity. On the return of the case there has been no special order,—only the mandate copied in the records of the court. The mandatory part of said mandate is as follows:

"In consideration whereof, it is now ordered, adjudged, and decreed that the case be, and the same is hereby, remanded to the court whence it came, with instructions to dismiss the bill unless, upon application for leave to amend the bill, leave to so amend it as to exhibit a case within the jurisdiction shall be granted by that court. The costs of the appeal to be equally divided. The appellant to recover costs in the court below. You are therefore hereby commanded that such proceedings be had in such case, in conformity with the opinion and decree of the court, as according to right and justice and the laws of the United States ought to be had, said appeal notwithstanding."

The opinion itself, at its conclusion, says:

"Appellant made no objection to the jurisdiction in the circuit court, and did not call the court's attention to the lack of jurisdiction. While the defendant and appellant must recover costs in the court below, we do not think it should be allowed full costs in this court. The costs of appeal will be equally divided. Reversed, and cause remanded to the circuit court of the United States for the district of Kentucky, with instructions to dismiss the bill unless, upon application for leave to amend the bill, leave to so amend it as to exhibit a case within the jurisdiction shall be granted by that court."

It will be seen from these quotations from the mandate and the opinion that the appellant, the Tug River Coal & Salt Co., was given its costs against the appellees; and the inquiry is whether the circuit court of appeals intended to have this a personal judgment against Murrey and Brigel, or as against them as trustees. As Murrey and Brigel sued alone as trustees under the deed of trust, and not in their individual capacity, it seems to us that the fair construction of the mandate and the opinion of the court is that the judgment for costs was to go against them as trustees, and not indi-

vidually. Their standing in the court was as trustees. Murrey, at least, had no other standing. And, while the court might have adjudged the costs against the complainants individually, we do not think that it has done so. The question is not how the costs should have been adjudged, but what the circuit court of appeals intended to be done. We therefore conclude that the true construction of the mandate and opinion is that the judgment for costs should go against Murrey and Brigel as trustees, and not individually. As we do not consider the judgment already entered to be other than as now indicated, the motion to modify the judgment should not be granted in terms; but the clerk, in issuing the execution, if one is requested, upon this judgment for costs, should issue it against Murrey and Brigel as trustees, and not individually. Their motion to modify the judgment so as to allow these costs which have been rendered against them as trustees to be set off against the mortgage debt due by the Tug River Company to the trustees in their representative capacity is not now disposed of, but reserved. The proper orders in pursuance of this opinion will be entered.