## George Moran v. Territory of Oklahoma.

(Filed September 3, 1904.)

1. **GRAND JURY—Summoning of—Jurisdiction of District Courts.** The district courts of Oklahoma possess common law jurisdiction, and these courts have the power to invoke the common law method of summoning grand jurors when no other provision is made by statute, or when the provision so made is inadequate.

2. **SAME.** Where no election has been held in a newly organized county, and, in consequence, no jury lists prepared and returned to the county clerk, as provided by statute, it is competent for the court or judge to issue an open venire, directed to the sheriff, or other competent officer, to summon the requisite number of grand jurors, who possess the necessary qualifications under the provisions of our statute.

3. **CRIMINAL LAW—Evidence—Res Gestae.** Where, upon the trial of an indictment for murder, it was shown by the evidence that three highwaymen attacked four persons, who were driving in a wagon on the public highway, and, without a moment's warning, shot and mortally wounded one of the party, who, a few hours thereafter died, testimony concerning the taking of the money and effects of the parties immediately after the shooting was admissible on the ground that it was a part of the res gestae, and as showing a motive for the commission of the homicidal act.

4. **SAME—Murder, Venue.** A person charged with the commission of the crime of murder must be indicted and tried in the county where the injury which caused the death was inflicted, and not at the place where the death occurred.

5. **SAME.** In a murder case, where the evidence shows that the mortal wound was inflicted in Oklahoma, and the death occurred in the Indian Territory, the jurisdiction to indict, try, convict and sentence the murderer is in Oklahoma.

6. **SAME.** Where a new county or jurisdiction is established after the commission of a crime, the defendant must be indicted, tried and sentenced in the jurisdiction comprising the territory in which the offense was committed, and not in the county to which the unorganized territory was attached for judicial purposes at the time of the commission of the offense.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before.
F. E. Gillette, Trial Judge.*

*R. J. Ray, J. A. Fain, F. E. Riddle* and *Cruce, Cruce
& Bleakmore,* for plaintiff in error.

*J. C. Robberts,, Attorney General. C. H. Woods, Assist-
ant,* and *S. M. Cunningham, County Attorney,* for defend-
ant in error.

Opinion of the court by

HAINER, J.: The plaintiff in error, George Moran,
was jointly indicted, in Comanche county, Oklahoma Terri-
tory, with Mort Perkins and Bert Casey, for the crime of
the murder of Joseph Philip Beemblossom on the 4th day
of August, 1901. A severance of trial was demanded by
the defendant and granted by the court, and the plaintiff in
error was separately tried and convicted of the crime of
murder, and the jury fixed his punishment at imprisonment
in the territorial prison, at hard labor, for his natural life,
and judgment was entered by the court in accordance with
the verdict. From this judgment and sentence the plaintiff
in error appeals to this court.

The evidence in relation to the homicide may be briefly
stated as follows: On the 4th day of August, 1901, Dr.
Z. E. Beemblossom, his son, Joseph Philip, Professor Easely,
and Harry Darbyshire started from Rush Springs, Indian
Territory, about three o'clock in the afternoon for Lawton,
Oklahoma. They were traveling in a light two-horse wagon,
and when they had traveled about six or seven miles in a
westerly course, being at that time in what is now Comanche
county, Oklahoma, they met two men, and stopped to in-

quire where they could get some water. As this inquiry
was made from the two strangers, three highwaymen, on
horseback, suddenly came upon them from the rear. One
came to the right side of the wagon, another to the left,
and one kept in the rear, and then a voice exclaimed, "If
they don't get their hands up, kill them," and almost in-
stantly there was a shot fired which struck Joseph Philip
Beemblossom, a little boy eleven years old, in the back, the
ball passing through his body. As the little boy was shot
he cried out, "Oh, Papa, I am shot." Immediately after
the shot these three highwaymen and desperadoes robbed
the party of all the money and valuables which they pos-
sessed, and then fled. The entire transaction did not last
over four minutes. After the tragedy the wounded and
bleeding form of the dying boy was slowly and gently borne
on an ambulance back to Rush Springs by the father and
friends, and about twelve o'clock on the same evening the
wound that he had received proved fatal, and Joseph Philip
Beemblossom passed away.

Rush Springs is situated in the Indian Territory, about
two miles from the eastern boundary of Comanche county, Ok-
lahoma. The three highwaymen were identified by the wit-
nesses for the prosecution as Mort Perkins, Bert Casey and
George Moran, the plaintiff in error. But little testimony
was introduced on behalf of the defendant, and this was to
the effect that the prosecution had failed to sufficiently iden-
tify the parties.

A number of errors, which we will consider in their or-
der, are assigned and argued by the plaintiff in error, and
upon them a reversal of this cause is asked. Among them are
several new and important questions as to jurisdiction. It is

urged that the court erred in overruling the motion to set aside the indictment for the reason that the grand jurors who found and returned the indictment were not drawn, summoned and impanelled as required by law. This same question was before the court in the case of *Smith and Mims v. The Territory,* decided at this term of the court, but not officially reported, where it was held that:

"The district courts of Oklahoma possess common law jurisdiction, and these courts have the power and authority to invoke the common law method of summoning a grand jury when no other provision is made by statute, or when the provision so made has been exhausted."

Hence, in a newly organized county, where no election has been held, and consequently no jury lists prepared and returned to the county clerk, as provided by the statute, it is competent for the court or judge to issue an open venire, directed to the sheriff or United States marshal, to summon the requisite number of grand jurors, who possess the necessary qualifications as such under the provisions of our statute. The motion, therefore, to set aside the indictment was properly overruled.

The next error assigned is that the court erred in overruling the motion for a continuance, but as this assignment is not argued, it will be deemed to have been waived.

It is next contended that the court erred in permitting the Territory to introduce testimony to show 'the commission of another felony. We have carefully examined the record in this case, and, in our opinion, this does not correctly. state the theory of the prosecution and the ruling of the court thereon. The Territory did not attempt to introduce testimony to show the commission of "another felony." The

evidence that was offered on behalf of the Territory was in regard to the entire transaction surrounding the commission of the homicide. The motive of the crime undoubtedly was robbery. The three highwaymen, who had planned to commit the robbery, were acting conjointly. The robbery did not consist merely of the taking of the money and effects of the parties after the fatal shot was fired, which resulted in the death of Joseph Philip Beemblossom, but it also included the assault upon the parties, the command or threat, "If they don't get their hands up kill them," and the firing of the fatal shot. All these things constituted one and the same transaction. They were a part of the *res gestae,* and were explanatory of the homicidal act. The entire transaction from start to finish, did not continue longer than three or four minutes. One eye-witness testified that it probably lasted two or three minutes. Another eye-witness testified that it did not last longer than three or four minutes. Hence, the evidence concerning the taking of the money and effects of the parties immediately after the shooting, the acts and conduct and statements of the parties until they fled, was clearly admissible, on the ground that it was a part of the *res gestae,* and as explanatory of the crime.

In the fourth assignment of error, it is claimed that the court erred in permitting the Territory to introduce testimony to show that the parties committed the homicide while in the commission of another felony. This contention is also clearly untenable, and is based upon an apparent misapprehension of the facts. The motive of the crime of murder, as heretofore stated, was no doubt highway robbery, and while the entire transaction at the scene of the homi-

cide constituted two distinct felonies, to wit, conjoint robbery and murder, both crimes were accomplished by the same acts and by the same means, and were so closely connected that it was impossible to disassociate them one from the other, and therefore it was competent to show the entire transaction.

It is next claimed that the court erred in permitting the Territory to introduce testimony showing that the deceased came to his death in the Indian Territory, and not in Oklahoma Territory. The indictment charges that the fatal shot was fired in Comanche county, Oklahoma Territory, on the 4th day of August, 1901, and that the deceased Joseph Philip Beemblossom did then and there instantly die. The proof shows that the shot was fired in what is now Comanche county, Oklahoma Territory, on the 4th day of August, 1901, and that the deceased died from the effects of such wound at Rush Springs, Indian Territory, about five or six hours after receiving the mortal wound, and that Rush Springs, Indian Territory, is about two miles from the east line of Comanche county, Oklahoma Territory. It is contended by the plaintiff in error that this constitutes a fatal variance between the allegations of the indictment and the proof, and that the jury should have been instructed that in the event they should find such facts to be true, then they should return a verdict of not guilty. In our opinion, the variance was not material.

In *Albright v. Territory,* 11 Okla. 497, this court held that:

"A person charged with the commission of the crime of murder must be indicted and tried in the county where the injury which caused the death was inflicted, and it is not necessary to allege the place of death."

In *State v. Bowen,* 16 Kan. 476, Mr. Justice Brewer, in discussing this subject, uses the following language:

"It seems to us, without pursuing the authorities further,. reasonable to hold that as the only act which the defendant does toward causing the death is in giving the fatal blow, the place where he does that is the place where he commits the crime, and that the subsequent wanderings of the injured party, uninfluenced by the defendant, do not give an ambulatory character to the crime; at least, that those movements do not, unless under express warrant of the statute, change the place of offense; and that while it may be true that the crime is not completed until death, yet that the death simply determines the character of the crime committed in giving the blow, and refers back to and qualifies that act."

In *United States v. Guiteau,* 1 Mackey 498, the supreme court of the District of Columbia held that it had jurisdicton to try, convict and sentence the murderer of President Garfield within the District of Columbia, although the shot was fired in the District of Columbia and the death occurred in the State of New Jersey. An application having been made to Mr. Justice Bradley, of the supreme court of. the United States, for a writ of habeas corpus, in stating his reasons for refusing the writ he uses the following language:

"It is contended that the murder was committed only partly within the District of Columbia and partly within the State of New Jersey, and therefore cannot be said to have been committed within the District of Columbia. By the strict technicality of the common law this position would probably be correct, although Lord Chief Justice Hale, one one of the greatest criminal lawyers and judges that ever lived, uses the following language. 'At common law,' he says, 'if a man had been stricken in one county and died in another, it

was doubtful whether he were indictable or triable in either, but the more common opinion was that he might be indicted where the stroke was given, for the death was but a consequence, and might be found, though in another county, and if the party died in another county, the body was removed into the county where the stroke was given, for the coroner to take an inquest *super visum corporis.'* This case shows that in Lord Chief Justice Hale's opinion the principal crime was committed where the stroke was given, and that when the production of the dead body gave the jury ocular demonstration of the *corpus delicti,* the difficulty of jurisdiction was overcome. But to remove the doubt as to the power of jurors to try such a case, it was enacted by the statute 2 and 3 Edward VI, c. 24, that the murderer might be tried in the county where the death occurred; and to remedy the difficulty where the stroke, or the death, happened out of England, it was enacted by a subsequent statute, 2 George II, c. 21, that the trial might be in the county where the stroke was given if the party died out of the realm; or where the death occurred, if the stroke was given out of the realm; this, in effect, making the murder a crime in the county in which either the stroke was given or the death occurred."

The crime was committed when the fatal shot was fired and the mortal wound inflicted in Comanche county, Oklahoma Territory, and the death which occurred in the Indian Territory merely determined the character of the crime, and only referred back to and qualified the homicidal act. It follows that the jurisdiction of the crime was properly laid in Oklahoma, and not in the Indian Territory.

The instructions offered by the defendant did not correctly state the law applicable to this case, and were, therefore, properly refused. The instructions which were given by the court fairly and correctly stated the law, and were

in full harmony with the doctrine announced in this opinion. Hence there was no error committed by the court in the instructions given, nor by the refusal to give the instructions requested by the defendant.

The last error assigned that is argued by the plaintiff in error is, that the court erred in holding that the offense charged was within the jurisdiction of Comanche county. It appears from the record that at the time the offense was committed that what is now known as Comanche county was a part of the Kiowa, Comanche and Apache Indian Reservation, and was attached to Canadian county for judical purposes, and that it did not become an organized county until the 6th day of August, 1901, two days after the offense was committed. Hence, it is contended by the plaintiff in error that the defendant should have been indicted and tried in Canadian county, to which this unorganized territory was attached at that time. We cannot concur in this view. Where one or several counties are created of territory formerly unorganized, a crime which was committed in such unorganized territory before the organization of such county or counties, must be prosecuted in the county in which is the place where the offense was committed.

In *State v. Bunker*, 38 Kan. 737, 17 Pac. 651, Chief Justice Horton, in passing upon this question says:

"Bunker should have been prosecuted in Lane county, where his offense was committed, not in Ness county. By the common law the trial of all crimes was required to be in the county where they were committed. It originally carried its jealousy further, and required that the jury itself should come from the vicinage where the crime was alleged to have been committed. The constitution of the

state ordains that the accused shall be entitled to 'a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.' The design of this constitutional provision seems to be to secure to the accused a trial by a jury from the vicinage where the crime is supposed to have been committed, so that he may have the benefit of his own good character and standing with his neighbors—if these he has preserved—and also such knowledge as the jury may possess of the witnesses who gave evidence before them. The word 'district,' like the word 'county,' is here used in a restrictive sense, and is intended to designate the precise portion of territory or division of the state over which a court at any particular sitting may exercise power in criminal matters. (*Olive v. State*, 11 Neb. 1, 7 N. W. 444.) There were no proceedings pending against Bunker in Ness county at the time of the organization of Lane county, on July 15, 1886. After that date Lane county was no part or portion of Ness county as a township or otherwise. By the general provisions relating to counties there must be a district court in each unorganized county. (*In re Wells*, 36 Kan. 341, 13 Pac. 548) Bishop on Criminal Procedure says: 'Where a county is divided, a criminal act done before the division is to be prosecuted in the particular new county in which is the place of the offense. The offense is against the state; the trial, in the new county.' (vol. 1, 849.) In Arkansas it has been held that 'if a new county is formed of territory formerly included in an old county, an indictment for an offense antecedently committed within the territory embraced in the new county may be maintained in the new, under the usual allegation setting out the offense as committed in the new' (*McElroy v. State*, 13 Ark. 708.) The same doctrine was declared in a New Jersey case, except that while it was held that the trial should be in the new county it was also held that the indictment should not allege that the crime was committeed in the new county, for the

reason stated, that it is seen that at the time mentioned there was no such place as that at which the offense is alleged to have been committed.' (*State v. Jones,* 8 N. J. Law, 307.) In Georgia, also, it has been held that the offender should be tried in the new county, and that the offense might be, or should be, charged as having been perpetrated in the old county. (*Jordan v. State,* 22 Ga. 545-555.)"

It follows that where a new county or jurisdiction is created after the commission of a crime, the defendant must be tried in the jurisdiction comprising the territory in which the offense was committed, and hence the defendant in this case was properly indicted and tried in Comanche county, Oklahoma.

We, therefore, hold that the indictment in this case was found and returned by a legally constituted grand jury; that the indictment clearly and concisely charges the crime of murder; that the jurisdiction of the crime was properly laid in Comanche county; that no error was committed by the court either in the admission of incompetent, irrelevant and immaterial testimony, or in the exclusion of competent, relevant and material testimony; that there was no material variance between any of the material allegations of the indictment and the proof; that there was no error committed by the court either in the giving of the instructions, or the refusal to give those requested by the defendant; and that the evidence fully sustains the verdict of the jury finding the defendant guilty of the crime of murder, and fixing the penalty at imprisonment for his natural life.

There being no error in the record, and believing that the verdict of the jury and the judgment of the court are

in consonance with right and justice, the judgment of the district court is affirmed.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.