Ex parte MORAN.

(Circuit Court of Appeals, Eighth Circuit.    March 1, 1906.)

No. 59.

1. HABEAS CORPUS—POWER OF SUPREME COURT TO ISSUE WRIT—JURISDICTION
    CONFERRED BY SECTION 716, REV. ST.

    The power of the Supreme Court to issue writs of habeas corpus, except
in cases affecting ambassadors, other public ministers or consuls, and in
those in which a state is a party, is a part of its appellate jurisdiction,
which was conferred upon it by that part of section 14 of the judiciary act
of 1789 (Act Sept. 24, 1789, c. 20, 1 Stat. 81) now embodied in section 716
of the Revised Statutes [U. S. Comp. St. 1901, p. 580.]

    [Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Habeas Corpus,
§ 39.

    Jurisdiction of federal courts in habeas corpus proceedings, see note
to In re Huse, 25 C. C. A. 4.]

2. SAME—CIRCUIT COURTS OF APPEALS HAVE SAME POWER WITHIN THEIR RE-
    SPECTIVE JURISDICTIONS.

    By the act of March 3, 1891, c. 517, § 12, 26 Stat. 826 [U. S. Comp. St.
1901, p. 553] the Circuit Courts of Appeals were invested with the same
power to issue writs of habeas corpus within their respective territorial
appellate jurisdictions which the Supreme Court possessed as a part of
its appellate jurisdiction within its territorial jurisdiction.

3. SAME—POWER OF APPELLATE COURTS OF UNITED STATES TO ISSUE WRITS
    EXTENDS TO CASES NOT REVIEWABLE BY ERROR OR APPEAL.

    The power of the Supreme Court and of the Circuit Courts of Appeals
to issue writs of habeas corpus is a part of their appellate jurisdiction,
which is distinct and separate from their power to review by writs of
error or by appeals.    It extends to cases of imprisonment by the judg-
ments or orders of inferior courts within their respective territorial ap-
pellate jurisdictions when the final judgments or the orders in the
specific cases are not reviewable in those courts by writs of error or by
appeals, as well as to the cases in which they are so reviewable.

4. SAME—SUPREME COURT AND CIRCUIT COURT OF APPEALS OF EIGHTH CIRCUIT
    HAVE POWER TO ISSUE IN CAPITAL CASES IN OKLAHOMA.

    The Supreme Court has jurisdiction to review the final decisions of the
Supreme Court of Oklahoma in certain classes of cases by writs of error
or by appeals.    This court has like jurisdiction in other and more numer-
ous cases.    Neither court has this power in cases of the conviction of
capital crimes.    But since each of these courts has appellate jurisdiction
over the Supreme Court of Oklahoma and hence over the subordinate
courts within its jurisdiction, the Supreme Court of the United States
and this court each has the power to issue writs of habeas corpus to in-
quire into the power of any court in Oklahoma Territory to imprison a
person convicted of a capital crime.

5. CRIMINAL LAW—PLACE OF TRIAL—IN COUNTY WHERE PLACE OF COMMIS-
    SION IS AT TIME OF TRIAL.

    Where, between the time of the commission of an offense and the
time of the indictment and trial for it, the place of its commission be-
comes a part of a new or different county or district, the court of the
county in which the place is situated at the time of the indictment and
trial has jurisdiction to hear and try the charge of the commission of
the offense.

    [Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law,
§ 231.]

6. HABEAS CORPUS—REVIEW LIMITED TO INQUIRY INTO JURISDICTION OR POWER
    TO IMPRISON.

    The review of a judgment of conviction and imprisonment by writ of
habeas corpus is limited to the questions, had the court which rendered

the judgment jurisdiction of its subject-matter and of the prisoner convicted? and did that court in the course of the procedure which resulted in the judgment exceed its jurisdiction?

7. COURTS—JURISDICTION—ITS EXTENT AND NATURE.

The jurisdiction of a question is the lawful power to enter upon a consideration of, and to decide it. It is not limited to authority to render a correct decision, but necessarily includes the power to decide wrong as well as right.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 1.]

8. TERRITORIES—LEGISLATURES OF, HAVE POWER TO PRESCRIBE PROCEDURE IN TERRITORIAL COURTS.

The legislatures of the territories have plenary authority to prescribe the methods of practice and procedure, the way of selecting grand and petit jurors and their qualifications, in the territorial courts, and, unless otherwise provided by the Constitution or laws of the United States, in the courts of the United States in the territories also.

9. SAME—TERRITORIAL LAWS NOT NATIONAL LAWS.

Laws enacted by the Legislatures of the territories are not laws of the United States.

10. HABEAS CORPUS—ILLEGAL SELECTION AND DISQUALIFICATIONS OF GRAND JURORS IN A TERRITORIAL COURT NO GROUND FOR DISCHARGE BY.

The selection of grand jurors in a way not authorized by a statute of a territory, the acceptance of disqualified persons as grand jurors, the receipt of an indictment found by such jurors, and the trial and conviction of a prisoner upon it by a territorial court, are decisions of questions within its jurisdiction, and though erroneous, are not violative of the Constitution of the United States and do not entitle the prisoner to a discharge upon a writ of habeas corpus. That writ may not perform the office of a writ of error.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Habeas Corpus, §§ 4, 22.]

(Syllabus by the Court.)

On Application for Writ of Habeas Corpus.

F. E. Riddle, for petitioner.

P. C. Simons, Atty. Gen., and S. M. Cunningham, for respondent.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. George Moran seeks a discharge from confinement in the penitentiary at Lansing, in the state of Kansas, where he is held by the Warden under a judgment of conviction of murder and a sentence of imprisonment rendered by the district court of Comanche county, in the territory of Oklahoma, which was affirmed upon a writ of error by the Supreme Court of that territory. Moran v. Territory (Okl.) 78 Pac. 111. The averments of his petition are that the facts are such that the court of Comanche county had no jurisdiction (1) to try the petitioner for the crime of murder; (2) to conduct the trial in the method adopted; or (3) to convict or sentence the petitioner, and that the Supreme Court of Oklahoma had no lawful power to affirm the judgment against him.

The question which first challenges the attention of this court is whether or not it has jurisdiction to issue the writ of habeas corpus to determine the power of a court in the territory of Oklahoma to imprison a person convicted of a capital crime. The act of March 3, 1891, c. 517, § 12, 26 Stat. 826 [U. S. Comp. St. 1901, p. 553] con-

ferred upon the Circuit Court of Appeals the powers specified in section 716 of the Revised Statutes [U. S. Comp. St. 1901, p. 580]. That section reads in this way:

"The Supreme Court and the circuit and district courts shall have power to issue writs of scire facias. They shall also have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

This section is a part of the judiciary act of 1789 (Act Sept. 24, 1789, c. 20, § 14, 1 Stat. 81) and while subsequent legislation has made and repealed grants of additional power, and section 688 [U. S. Comp. St. 1901, p. 565] regarding writs of mandamus and section 752 et seq. [U. S. Comp. St. 1901, p. 592] relating to writs of habeas corpus have been extracted from or added to this legislation, the power of the Supreme Court to issue writs of habeas corpus and writs of mandamus was originally conferred by, and is still derived from that portion of the act of 1789 which is now embodied in this section 716. It has been settled by repeated decisions of the Supreme Court that this power is a part of its appellate, and not of its original jurisdiction, except in cases affecting ambassadors, other public ministers or consuls, and those in which a state is a party. Ex parte Bollman, 4 Cranch, 75, 100, 2 L. Ed. 554; Ex parte Yerger, 75 U. S. 85, 98, 19 L. Ed. 332; Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60; Bath County v. Amy, 13 Wall. 244, 249, 20 L. Ed. 539; Kendall v. U. S., 12 Pet. 622, 9 L. Ed. 1181; Barber Asphalt Pav. Co. v. Morris, 66 C. C. A. 62, 132 Fed. 952, 67 L. R. A. 761. The natural construction of the grant by the act of 1891 to the Circuit Courts of Appeals of the same power to issue writs necessary for the exercise of their jurisdiction, which had been granted to the Supreme Court by this section, is that the extent and limits of this power within the respective territorial jurisdictions of the Supreme Court and of the Courts of Appeals are the same and that they are those which had been fixed by the decisions of the Supreme Court rendered before the act of 1891 was passed. In the interpretation of this legislation the importance of its subject and the method of its treatment by the Congress and the courts should not be disregarded. Chief Justice Chase said:

"The great and leading intent of the Constitution and the law must be kept constantly in view upon the examination of every question of construction. That intent, in respect to the writ of habeas corpus, is manifest. It is that every citizen may be protected by judicial action from unlawful imprisonment." Ex parte Yerger, 75 U. S. 101, 19 L. Ed. 332.

In dignity, in power and in the finality and effect of their adjudications the United States Circuit Courts of Appeals are inferior to the Supreme Court of the United States alone in this country. The grant of the power to issue the writ of habeas corpus to these courts is conducive to a wise and speedy administration of justice. It prevents confusing and conflicting opinions of judges of inferior courts and tends to secure uniformity and certainty in the administration of the law of personal liberty. It enables those who deem themselves deprived of their freedom in violation of their rights to secure speedy relief, if they are entitled thereto, without the vexatious delay and ex-

pense of an application to a subordinate court or judge and an appeal to this court, before its opinion can be obtained. By the act of 1891 Congress conferred upon these courts the power to issue writs of mandamus and other writs which the Supreme Court was empowered to issue under section 716. The writ of habeas corpus was the most important and most beneficent in its effect of all those which the Supreme Court had been authorized to issue. It is the great prerogative writ guarantied to our English ancestors by the habeas corpus act of May 27, 1679 (3 British Statutes at Large, 397), brought to this country by the colonists, and secured to the citizen by our Constitution, save when in cases of rebellion or invasion the public safety may require its suspension. Article 1, § 9, cl. 2. It is the best defense and the most efficient security of personal liberty. The power to issue this writ had been granted to the Supreme Court, to the Circuit and Districts Courts of the United States and to the justices and judges who compose them, when the Circuit Courts of Appeals were created. It would have been anomalous and difficult of belief that Congress would establish courts with jurisdiction and power superior to those of all the other courts of the United States except those of the Supreme Court, would confer upon them the power to issue inferior writs, and would withhold from them the authority to issue the writ of habeas corpus which had been granted to the other courts of the nation. The grant to these courts within their respective territorial appellate jurisdictions of the same power to issue this writ which had been given to the Supreme Court was the natural and rational course of legislation. Before the act which established these Courts of Appeals was adopted the Supreme Court had affirmed by a long line of decisions that the power to issue this writ for the purpose of inquiring into the jurisdiction of courts within its appellate jurisdiction to render judgments of imprisonment was granted to it by the terms of section 716. The act of 1891 expressly granted to the Circuit Courts of Appeals within their repective appellate jurisdictions the power granted to the Supreme Court by this section. The logical deduction is that this power is a part of the appellate jurisdiction of these courts, as it is of that of the Supreme Court, and that its extent within their respective territorial appellate jurisdictions is the same as the extent of this power granted to the Supreme Court within its territorial jurisdiction. These views and this conclusion do not appear to have been the subject of debate among the members of the bar nor of discussion and decision by the courts. They seem to have met the approval of lawyers and judges and until this case arose the jurisdiction of the Circuit Courts of Appeals to issue writs of habeas corpus has been affirmed and exercised without objection or question. Ex parte Buskirk, 72 Fed. 14, 22, 18 C. C. A. 410, 418; 4 Fed. Stat. Ann. 431; In re Dowd (C. C.) 133 Fed. 717.

The argument that the deduction from this legislation that the limits of the power to issue the writs of habeas corpus granted to the Courts of Appeals within their respective jurisdictions are the same as the limits of that granted to the Supreme Court within its jurisdiction is unwarranted because the jurisdiction of the Courts of

Appeals is limited while that of the Supreme Court is more general has been considered, but it has not proved convincing. While the jurisdiction of the Supreme Court over the courts within the states is in a sense constitutional, its appellate jurisdiction is nevertheless prescribed and limited by acts of Congress. It, like the Courts of Appeals, has the appellate jurisdiction granted to it by the legislative department of the Government and no more. U. S. v. More, 3 Cranch, 159, 2 L. Ed. 397; Durousseau v. U. S., 6 Cranch, 307, 313, 3 L. Ed. 232. And in the territories, in one of which the case now under consideration arose, the appellate jurisdiction of the Supreme Court and that of the Courts of Appeals are derived from the same power and in the same way. The authority of the Supreme Court in the territories is not constitutional, but like that of the Courts of Appeals it is exclusively legislative. In cases from the territories the Supreme Court does not exercise any of the judicial power of the United States conferred upon it by the Constitution but all its power is granted by the legislative department of the Government under section 3 of article 4 of the Constitution, which empowered Congress to dispose of, and make all needful rules and regulations respecting the territory of the United States. "There is no Supreme Court of the United States, nor is there any District Court of the United States, in the sense of the Constitution, in the Territory of Utah," said Chief Justice Chase in Clinton v. Englebrecht, 13 Wall. 434, 447, 20 L. Ed. 659; American Ins. Co. v. Canter, 1 Pet. 511, 546, 7 L. Ed. 242; Benner v. Porter, 9 How. 235, 242, 243, 13 L. Ed. 119; Hornbuckle v. Toombs, 18 Wall. 648, 655, 21 L. Ed. 966; Good v. Martin, 95 U. S. 90, 98, 24 L. Ed. 341.

As the appellate jurisdiction of the Supreme Court and that of the Circuit Court of Appeals were derived from the same source and limited by the same power, and as that power granted to the Courts of Appeals within their respective territorial jurisdictions the same authority to issue writs of habeas corpus which it had granted to the Supreme Court within its jurisdiction, the justifiable conclusion is that the extent and the limits of the power thus granted to the former must be measured by the extent and the limits which conditioned the authority of the latter in 1891 when the grant was made to the Courts of Appeals.

It is said, however, that if the power to issue the writ has been conferred upon this court, it extends only to cases which are reviewable here by writ of error or by appeal, and that since the case of the petitioner was not reviewable by this court in that way, it has no jurisdiction to question by the writ of habeas corpus the power of any of the courts in Oklahoma to confine the prisoner. The jurisdiction to review by writs of error or by appeal the final judgments of the Supreme Court of the Territory of Oklahoma is divided between the Supreme Court of the United States and this court. The former has jurisdiction to revise in that way cases which involve the validity of a treaty, a statute, or an authority exercised under the United States, and civil cases which are not reviewable by the Circuit Courts of Appeals in which the matter in dispute exceeds $5,000. 1 U. S. Comp. St. pp. 571, 572; Rev. St. § 702; Act March 3, 1885, c. 355, 23 Stat. 443.

This court has the power to review in that way final decisions of the Supreme Court of Oklahoma in all cases in which the jurisdiction below is dependent upon the citizenship of the opposite parties to the suit, in all admiralty cases, in all cases arising under the patent laws, the revenue laws and the bankruptcy laws, and in all cases arising under the criminal law except in cases of the conviction of a capital crime. Act March 3, 1891, c. 517, §§ 6, 15, 26 Stat. 828, 830 [U. S. Comp. St. 1901, pp. 549, 554]; Act Jan. 20, 1897, c. 68, 29 Stat. 492 [U. S. Comp. St. 1901, p. 556] 139 U. S. 707, 11 Sup. Ct. iv; Shute v. Keyser, 149 U. S. 649, 13 Sup. Ct. 960, 37 L. Ed. 884; Plymouth Cordage Co. v. Smith, 194 U. S. 311, 314, 24 Sup. Ct. 725, 48 L. Ed. 992. The fact may be noticed in passing that this court has the same jurisdiction by writ of error or appeal to review the judgments and decrees of the Supreme Court of Oklahoma that it has to review the judgments and decrees of the Circuit Courts of the United States within its circuit in which its judgments are final. Neither the Supreme Court nor this court has any jurisdiction to review in this way the judgments of the Supreme Court of Oklahoma in cases of a conviction of a capital crime. Folsom v. U. S., 160 U. S. 121, 126, 127, 16 Sup. Ct. 222, 40 L. Ed. 363. It will be seen that unless the appellate jurisdiction of the Supreme Court, or that of this court, to issue the writs of habeas corpus, extends beyond the specific cases which may be reviewed by writ of error or by appeal, neither of these courts may issue the writ of habeas corpus to inquire into the confinement by a judgment or order of a court of Oklahoma of any person for conviction of a capital crime, while those there convicted of less heinous offenses have been granted the privilege of the writ.

Appellate jurisdiction consists of many parts. The power to review by writ of error or by appeal is but one portion of that jurisdiction. The appellate jurisdiction exercised by the issue of writs of habeas corpus is distinct and separate from that invoked by writs of error or by appeals. The former is limited to a consideration and determination of the existence and extent of the jurisdiction of the subordinate court which has confined the prisoner. The latter extends to a review of the regularity of its procedure, of its rulings upon questions of law and in suits in equity to a reconsideration of its findings of fact. The former presents the question whether the prisoner is confined without authority of law, the latter whether the case of the aggrieved party was lawfully tried. These two powers do not occupy the same, but different portions of the entire appellate jurisdiction of a court which may exercise both. Neither of them includes the other. Neither of them is identical with the other or with the appellate jurisdiction of the court. But that jurisdiction includes them both. Ex parte Bollman, 4 Cranch, 75, 100, 2 L. Ed. 554.

If the law has not been misapprehended, then, the power of the Circuit Courts of Appeals to issue writs of habeas corpus in their respective territorial appellate jurisdictions must be measured by the power of the Supreme Court within its territorial appellate jurisdictions, and this power is a part of appellate jurisdiction separate and distinct from the power of review by writs of error or by appeals. Let us now return

to and examine the question at issue in the light of these conclusions. Is that part of the appellate jurisdiction of the Supreme Court and of the Circuit Courts of Appeals, which consists in the power to test the jurisdiction of subordinate courts to confine prisoners, limited to those cases which are included in that part of their appellate jurisdiction which consists in the power to review by writs of error or by appeals? And we turn to the decisions of the Supreme Court rendered before the grant of appellate jurisdiction was made to the Courts of Appeals in 1891 for the answer. In the early cases that court answered the question in the negative by its action, issued writs of habeas corpus, questioned and decided the jurisdiction of inferior courts in cases not reviewable by writs of error or by appeals. Ex parte Burford, 3 Cranch, 448, 451, 2 L. Ed. 495; U. S. v. Hamilton, 3 Dall. 17, 1 L. Ed. 490; Ex parte Kearney, 7 Wheat. 39, 5 L. Ed. 391. In Ex parte Bollman, 4 Cranch, 75, 93–103, 2 L. Ed. 554, the question was presented, discussed and decided. Bollman had been committed for trial for treason by the United States Circuit Court of the District of Columbia. Chief Justice Marshall, after citing section 14 of the judiciary act, said:

"The only doubt of which this section can be susceptible is, whether the restrictive words of the first sentence limit the power to the award of such writs of habeas corpus as are necessary to enable the courts of the United States to exercise their respective jurisdictions in some causes which they are capable of finally deciding."

After an exhaustive discussion of the nature and history of the writ and a review of the previous decisions of the court he held that the power to issue the writs was limited by section 14 to those necessary to the exercise of the appellate jurisdiction of the court, but that "the revision of a decision of an inferior court by which a citizen has been committed to jail" was a part of the court's appellate jurisdiction, that the issue of the writ of habeas corpus was necessary to the exercise of that jurisdiction, and the writ was issued.

In Ex parte Watkins, 3 Pet. 193, 198, 7 L. Ed. 650, the petitioner sought release from imprisonment under a judgment of conviction of crime, which was rendered by the Circuit Court of the United States for the District of Columbia. The Attorney General strenuously contended that the Supreme Court had no power to issue a writ of habeas corpus in a criminal case which had arisen in the Circuit Court because it had no jurisdiction to review the action of that court in such a case by writ of error or by appeal. Chief Justice Marshall answered:

"This application is made to a court which has no jurisdiction in criminal cases [United States v. More, 3 Cranch, 169, 2 L. Ed. 397]; which could not revise this judgment; could not reverse or affirm it, were the record brought up directly by writ of error. The power, however, to award writs of habeas corpus is conferred expressly on this court by the fourteenth section of the judiciary act, and has been repeatedly exercised. No doubt exists respecting the power; the question is, whether this be a case in which it ought to be exercised."

And he proceeded to investigate and determine the jurisdiction of the court below to render judgment. The appellate jurisdiction of the Supreme Court to issue writs of habeas corpus in cases not reviewable by writs of error or by appeals appears to have remained unchallenged

Ex parte Wells, 18 How. 307, 310, 15 L. Ed. 421) from 1830 until 1868, when it was again questioned in Ex parte Yerger, 75 U. S. 85, 100, 101, 19 L. Ed. 332. Yerger was held for trial for murder by a military commission. The Circuit Court of the United States issued a writ of habeas corpus, inquired into the cause of his detention and dismissed his petition for a discharge. The Supreme Court had no jurisdiction to review by writ of error or appeal either the action of the military commission or that of the United States Circuit Court, and the objection to the jurisdiction of the Supreme Court to issue the writ was forcibly presented by Attorney General Hoar. But after an exhaustive review of the course of legislation and decision upon this subject, the court again affirmed its former rulings and sustained its jurisdiction to issue the writ.

In the year 1879, Siebold and others had been convicted and imprisoned by the Circuit Court of the United States for the District of Maryland in cases which were not reviewable by the Supreme Court by writ of error or appeal. An application was made to it for the writ. The jurisdiction was challenged upon the same ground which had been presented in prior cases. The court said:

"The question is whether a party imprisoned under a sentence of a United States court, upon conviction of a crime created by and indictable under an unconstitutional act of Congress, may be discharged from imprisonment by this court on habeas corpus, although it has no appellate jurisdiction by writ of error over the judgment. It is objected that the case is one of original and not appellate jurisdiction, and, therefore, not within the jurisdiction of this court. But we are clearly of opinion that it is appellate in its character. It requires us to revise the act of the Circuit Court in making the warrants of commitment upon the convictions referred to. This, according to all the decisions, is an exercise of appellate power." Ex parte Siebold, 100 U. S. 371, 374, 25 L. Ed. 717.

Later decisions reiterate the rule. Ex parte Parks, 93 U. S. 18, 23, 23 L. Ed. 787; Ex parte Royall, 117 U. S. 241, 248, 6 Sup. Ct. 734, 29 L. Ed. 868; In re Tyler, 149 U. S. 164, 168, 13 Sup. Ct. 785, 37 L. Ed. 689. Let not the fact escape notice that the jurisdiction to issue the writ has been sustained by the Supreme Court whether the court below itself rendered the judgment of imprisonment, as in the case at bar and in Bollman's Case, Watkin's Case, and Siebold's Case, or merely refused to discharge a prisoner who was confined under a commitment made by a military commission or some other body, as in Yerger's Case.

The repeated decisions by the Supreme Court of the question under consideration, to which reference has now been made, leave no doubt that the part of the appellate jurisdiction of that court and of the Circuit Courts of Appeals which constitutes the power to issue writs of habeas corpus to test the jurisdiction of subordinate courts to confine prisoners is not limited to the cases reviewable by these courts by writs of error or by appeals, but extends to the judgments and orders of imprisonment of subordinate courts within their respective territorial appellate jurisdictions in cases which are not thus reviewable. This conclusion accords with the spirit of the opinions of the courts and with the purpose of the legislation of Congress upon this subject which Mr. Justice Harlan says was "to invest the courts of the Union

and the justices and judges thereof, with power upon writ of habeas corpus, to restore to liberty any person, within their respective jurisdictions, who is held in custody, by whatever authority, in violation of the Constitution or any law or treaty of the United States." Ex parte Royall, 117 U. S. 248, 6 Sup. Ct. 734, 29 L. Ed. 868. It assures to those convicted of capital crimes in the territory of Oklahoma the privilege of the writ of habeas corpus from an appellate court of the United States which those convicted in that Territory of less flagrant offenses enjoy, and it tends to protect the rights and preserve the liberties of the citizens. The result is that since the Supreme Court of Oklahoma, and hence the subordinate courts of that territory are within the territorial appellate jurisdiction of the Supreme Court and of this court each of these courts has the power to issue the writ of habeas corpus to test the jurisdiction of a court in that territory to imprison a person convicted of a capital crime, and the petition in this case may not be disposed of upon the ground that this court is without jurisdiction to consider it.

The petitioner was tried and convicted by the district court of the territory of Oklahoma for Comanche county of the crime of murder committed on August 4, 1901, in territory which was at the time of the trial a part of Comanche county. His counsel asserts that the territorial court had no jurisdiction to try or to sentence him for a violation of the territorial statute (1) because the place where the offense was committed was at the time of the murder a part of the Kiowa, Comanche, and Apache Indian reservation, so that his offense was triable and punishable by the United States court in the Indian territory only for a violation of a federal statute; (2) because at the time of the murder the place of its commission was attached to Canadian county for judicial purposes and did not become a part of Comanche county until August 6, 1901; and (3) because the Supreme Court of the territory which was authorized by statute to fix the time when, and the place at the county seat where, the district court should convene, named the time and the town which was the county seat, but failed to specify the building in which the court should be held. But the Indian title to the reservation was extinguished on June 6, 1900, when the agreement of October, 1892, was ratified by the United States (Act June 6, 1900, c. 813, 31 Stat. 677; Act March 3, 1901, c. 846, 31 Stat. 1093; Bates v. Clark, 95 U. S. 204, 205, 208, 24 L. Ed. 471; Buster v. Wright, 135 Fed. 952, 68 C. C. A. 510) and the murder was a violation of the territorial and not of the national statute. The Supreme Court of Oklahoma rightly held that where, between the time of the commission of an offense and the time of the indictment and trial for it, the place of its commission becomes a part of a new or different county or district, the court of the county in which the place is situated at the time of the indictment and trial may lawfully take cognizance of, and adjudicate the charge of its commission. Moran v. Territory (Okl.) 78 Pac. 111. And the failure of the Supreme Court to specify the room or building in which the district court was to be held did not affect its jurisdiction to hear and determine the case of the territory against the petitioner in the absence of any proof

that he or his counsel were not aware of, or failed to have opportunity to prepare for the trial. The district court of the territory of Oklahoma, therefore, had jurisdiction of the subject-matter and of the person of the petitioner in the trial in which he was convicted of the crime.

But counsel argues that the judgment is void, because the prisoner was not indicted by a lawful grand jury. The statutes of Oklahoma required grand jurors to be qualified electors and to be drawn from lists selected by the judges of election. 1 Wilson's Rev. & Ann. St. Okl. 1903, §§ 2907, 3308, 3310 et seq. Some, if not all, of those who acted as grand jurors were not such electors, were not residents or citizens of the county, and perhaps were otherwise disqualified. There had been no election and no judges of election in Comanche county when this jury was drawn, and the jurors were called from the vicinage by the sheriff pursuant to the direction of the judge.· If these objections to the trial had been seasonably made, it may be that they would have been fatal to the judgment of conviction if that judgment had been reviewable in the Supreme Court or in this court by a writ of error. Crowley v. U. S., 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1075; Sharp v. U. S. (C. C. A.) 138 Fed. 878. But do they entitle the petitioner to his release upon a writ of habeas corpus? The grounds upon which a prisoner in jail may be discharged by the use of this writ are specified in section 753 of the Revised Statutes [U. S. Comp. St. 1901, p. 592], and the only ones possibly applicable to this case are that the petitioner "is in custody in violation of the Constitution or of a law or treaty of the United States." No treaty is broken by his confinement. The laws of the territory are not laws of the United States, and their violation or disregard in the selection of the grand jury and the trial upon an indictment found by disqualified jurors was not an infraction of any national law. Linford v. Ellison, 155 U. S. 503, 508, 15 Sup. Ct. 179, 39 L. Ed. 239; Maricopa & Phœnix Railroad v. Arizona, 156 U. S. 347, 351, 15 Sup. Ct. 391, 39 L. Ed. 447. The only provisions of the Constitution which may relate in any way to the acts of the trial court here under consideration are:

(1) "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury; * * * (2) nor be deprived of life, liberty, or property, without due process of law." Const. Amend. art. 5.

But the Supreme Court has decided that the trial, sentence and confinement of a person for murder in accordance with the Constitution and laws of a state without a presentment or indictment by any grand jury whatever is not a violation of either of these provisions of the Constitution. Hurtado v. California, 110 U. S. 516, 4 Sup. Ct. 111, 28 L. Ed. 232; McNulty v. California, 149 U. S. 645, 13 Sup. Ct. 959, 37 L. Ed. 882. The United States by the organic act of the territory of Oklahoma empowered its Legislature to enact any laws which were not inconsistent with the Constitution and laws of the United States. 1 Wilson's Rev. & Ann. St. Okl. 1903, p. 73, § 66. Neither the Constitution nor the laws of the United States prescribe the qualifications or the method of selection of grand jurors in the territories, and the Legis-

lature of Oklahoma, therefore, had plenary power over these subjects. Clinton v. Englebrecht, 13 Wall. 434, 448, 20 L. Ed. 659; Hornbuckle v. Toombs, 85 U. S. 648, 655, 21 L. Ed. 966; Good v. Martin, 95 U. S. 90, 98, 24 L. Ed. 341. The conclusion necessarily follows that if the Legislature of Oklahoma had prescribed the method of selection of grand jurors which the trial court adopted and the qualifications which those who found the indictment actually possessed, the course of the trial would not have constituted a violation of any provision of the Constitution of the United States. And if this be true, it is difficult to perceive how this course could have constituted such a violation or more than irregularities or errors of law in the absence of such legislation.

The writ of habeas corpus does not challenge the regularity or legality of the action of a court in the trial or procedure which results in the imprisonment of a petitioner. It may not perform the office of a writ of error or of an appeal. It presents but two questions for consideration: Did the court which rendered the judgment or made the order of imprisonment have jurisdiction of the subject-matter and of the person? And did the court in the course of the proceeding which resulted in the judgment exceed its jurisdiction? Ex parte Parks, 93 U. S. 18, 23, 23 L. Ed. 787; Ex parte Siebold, 100 U. S. 371, 375, 25 L. Ed. 717. The district court of Comanche county was not without jurisdiction to try and sentence the petitioner for the crime of murder in violation of the territorial statute. The only question remaining is, did it exceed its jurisdiction in the method of its procedure? Jurisdiction of a question is the lawful power to enter upon the consideration of, and to decide it. It is not limited to making correct decisions. It necessarily includes the power to decide an issue wrong as well as right. Foltz v. St. Louis & S. F. Ry. Co., 8 C. C. A. 635, 637, 60 Fed. 316, 318. When the district court of Comanche county had acquired jurisdiction of the prisoner and of the charge against him and the question arose in what manner the grand jury should be selected, that issue could not have been beyond the limits of its jurisdiction. The law had conferred upon it the power, and had imposed upon it the duty to try the petitioner for his alleged offense and the decision of that question was indispensable to such a trial. That court could not have lawfully stopped and refused to determine the issue. If it decided that question wrong, its action may have been error, but it was nevertheless the exercise of its lawful jurisdiction. The acceptance of disqualified jurors, the receipt of the indictment they found, and the trial of the petitioner thereon were acts of like character. That court had ample authority to determine whether or not their indictment should be received and whether or not the petitioner should be tried upon it. Its action may have been erroneous, its decisions of these questions may have been wrong, but they fell far within the lawful limits of its jurisdiction and they were not violative of the Constitution. They may not, therefore, be reviewed or reversed upon a writ of habeas corpus. A deficiency in the number of grand jurors prescribed by law when there was a sufficient number present to find the indictment (Ex parte Wilson, 140 U. S. 575, 11 Sup. Ct. 870, 35 L. Ed. 513), the exclusion from a grand jury of

persons otherwise qualified (U. S. v. Gale, 109 U. S. 65, 3 Sup. Ct. 1, 27 L. Ed. 857), the denial of compulsory process for obtaining witnesses, the presence and participation of an alien in the finding of an indictment in a territorial court (Ex parte Harding, 120 U. S. 782, 7 Sup. Ct. 780, 30 L. Ed. 824), and the fact that one of the members of the petit jury which tried the defendant for murder was an alien (Kohl v. Lehlback, 160 U. S. 293, 16 Sup. Ct. 304, 40 L. Ed. 432) have been held by the Supreme Court to evidence the exercise of no excess of jurisdiction by courts which tried and imprisoned the defendants and no violation of the Constitution.

As it does not appear in the case in hand that the district court of Comanche county was ever without jurisdiction of the case or the person of the petitioner nor that it exceeded its jurisdiction in the conduct of the proceedings which resulted in his imprisonment nor that it in any way violated the Constitution of the United States, the prisoner must be remanded to the custody of the warden of the penitentiary and the writ of habeas corpus must be discharged.

It is so ordered.

HOOK, Circuit Judge, concurs in the discharge of the writ.